FROST'S DETROIT LUMBER AND WOODEN-WARE WORKS *vs.* MILLERS' AND MANUFACTURERS' MUTUAL INSURANCE COMPANY.

July 27, 1887.

Fire Insurance—Alteration of Building—Increase of Risk—Notice.— A policy of insurance provided that if the insured building should oe "altered, added to, or enlarged," notice must be given and consent indorsed on the policy. The contract (a by-law) elsewhere provided that if a building should be "altered, enlarged, or appropriated to any other purposes than those mentioned, or the risk be otherwise increased," without the consent of the insurer, the policy should be void. These provisions construed as requiring notice and consent with respect to a material enlargement of the building, even though the risk was not thereby increased.

Same—Alterations and Repairs.—A written provision in such a policy, authorizing "necessary alterations and repairs," did not authorize a material enlargement of the building, as by an addition 12 feet wide and 200 feet long.

**Same—Parol Evidence to Vary Written Contract.**—Parol evidence that such an enlargement was contemplated by the parties when the insurance was made is not admissible to vary the effect of the written contract.

**Same—Use of Premises—Description of Property.**—A contract of insurance, made for a period of years, upon a mill building and machinery, while the process of construction was known to be still incomplete and going on, is applicable to the property when complete as contemplated by the parties. A description of the property as a "saw-mill building" had not the effect to restrict the use to the purpose of a saw-mill.

**Principal and Agent—Evidence.**—Evidence deemed sufficient to justify a conclusion that persons through whom the insurance was effected were the agents of the insurer.

The plaintiff brought this action in the district court for Hennepin county, upon an insurance policy issued by the defendant, the property insured having been destroyed by fire. The action was tried before *Rea*, J., and a jury, who returned a general verdict for plaintiff, and, in answer to questions submitted to them, found specially (1) that the building described in the policy of insurance was added to or enlarged after the making of the insurance, and before the fire, "by permission given as attached to the policy;" (2) that the building was not appropriated to any other purpose than those mentioned in the policy; (3) that the use of the building did not increase the risk of loss by fire; (4) that no dry-kilns were put in the building by the assured except what were in contemplation; (5) that the dry-kilns did not increase the risk of loss by fire; (6) that the amount of machinery was increased with the consent and knowledge of the insurer, as agreed upon or intended; (7) that the increase of machinery did not increase the risk of loss by fire; and (8) that the amount of incumbrance upon the property insured was not misstated by plaintiff's manager in the application for insurance. Defendant appeals from an order refusing a new trial.

*Benton & Roberts* and *M. B. Koon*, for appellant.

*Torrance & Fletcher*, for respondent.

DICKINSON, J.[1]  Our decision of this appeal will be based principally upon the construction given to the contract of insurance as

---

[1] Berry, J., because of illness, took no part in this case.

respects the enlargement of the building insured. One of the printed clauses of the policy is as follows : "*Repairs and additions.* Such ordinary repairs as may be necessary to keep the premises in good condition are permitted by this policy; but if the buildings hereby insured be altered, added to, or enlarged, due notice must be given and consent indorsed hereon." A by-law indorsed upon the policy, and by the terms of the policy made a part of the contract, contains the provision that "whenever a building insured by this company, or containing the property insured, shall be altered, enlarged, or appropriated to any other purposes than those mentioned, or the risk be otherwise increased, * * * without the consent of the company first obtained in writing, such policy shall be void."

About a year and a half after the insurance, the building (which was until then about 53 feet wide and 200 feet long) was extended on one side so as to make it 12 feet wider through its whole length of 200 feet. The jury found specifically that this enlargement did not increase the risk. If the provision first above recited had stood alone, there would have been no doubt that a material enlargement of the building, without the consent of the insurer, would have constituted a violation of the condition of the policy, even though the risk might not have been in fact thereby increased. It was competent for the parties by their contract to thus leave it in the power of the insurers to determine whether in their judgment the risk would be increased, and whether or not they would continue the insurance, if the situation or condition of the property should be changed by any material addition or enlargement. The contract explicitly reserving this right to the insurers to exercise their own judgment in the premises, they are not to be deprived of it, and held bound, notwithstanding the disregard by the insured of the conditions of the contract, merely because in the judgment of a jury the change did not in fact increase the risk. The only doubt as to the construction of the contract grows out of the provisions in the by-law, that if a building insured shall be "altered, enlarged, or appropriated to any other purposes than those mentioned, *or the risk be otherwise increased,*" etc. But in view of the distinct, unqualified, and apparently complete provision first recited, we are of opinion that the words in the by-law, and which we have put in italics,

·cannot be construed so as to affect the plain meaning of the former provision.    The two provisions are consistent, if the qualifying effect of the italicized words be limited to the immediately antecedent clause, "appropriated to any other purposes than those mentioned."    The result of this construction is that the policy would be avoided by any material enlargement or alteration of the building without the consent of the insurer, or by the appropriation of the building to other purposes than those mentioned, if the risk should be thereby increased, or if the risk be increased otherwise than by appropriating the property to other uses than those mentioned.    *Lyman* v. *State Mut. Fire Ins. Co.,* 14 Allen, 329.

That the enlargement was a material one, such as would come within this stipulation of the contract, we do not doubt.    Under the construction which we have put upon the policy, the fact that the risk was not increased, as the jury considered, does not do away with the invalidating effect of the disregard by the assured of this condition.    There was, however, *written* in the policy a permission "to make necessary alterations and repairs," and it is claimed that this was a necessary alteration.    While the written provision of a contract should prevail over one which is inconsistent with it, and which is part of a printed form, adopted for general use, yet only so far as it is apparent that the parties intended to modify or disregarded the printed stipulations will the latter give way.    We are unable to construe this writing as wholly inconsistent with, or as intended to wholly do away with, the requirement expressed in the printed condition, that if the building be "altered, added to, or enlarged," notice must be given and consent indorsed.    It is operative to qualify the provision respecting alterations merely, without necessarily affecting that respecting additions or enlargements.    Necessary alterations and repairs upon the existing structure, whatever such "alterations" might properly include, were authorized; but not a material enlargement of the whole building, such as was made in this case.

There was evidence directed to showing that this enlargement was contemplated by the assured when the contract was made, and that the agent was advised of this at the time.    The building was in process of construction when the insurance was effected, and the con-

tract of insurance should be deemed applicable, not only to the incomplete structure, but to the building when completed. But, as we understand the evidence, this addition can hardly be deemed to have been a completion of the process of construction, but an enlargement of an already complete structure. It was made long after the original structure was completed, and involved the tearing down of one side of the same 200 feet in length. As we understand the facts sought to be shown, the proof was incompetent, under the rule which forbids oral evidence to vary the terms of a written contract.

For the reasons above expressed, we think that the verdict cannot stand, and there must be a new trial.

Some other questions are involved in the appeal which it is expedient that we should pass upon, as they may be expected to arise again if there should be a retrial of the cause. Without referring particularly to the evidence of the agency of Smith & Spencer, we will say that the evidence is deemed to have been sufficient to justify the conclusion that, for the purpose of effecting this insurance, those persons were the agents of the defendant.

Because parol evidence was received, and the question left to the jury as to whether the use to which the building was put was such as the parties had contemplated, the defendant contends that the rule was violated which requires that the written contract only shall determine the intention of the parties. Attention is particularly called to the term "saw-mill building," by which the building insured is designated in the policy; also to the provision above recited from the by-law avoiding the policy if the property shall be "appropriated to any other purposes than those mentioned." The building was used at the time of the fire for the sawing of lumber from logs, and also as a box factory, having in it proper machinery for those purposes, and some dry-kilns for drying lumber by steam. The principle relied upon by the appellant is not applicable. The contract is to be construed in the light of the circumstances under which it was made. The insurance to run five years was effected while the building was known to be in the process of construction and equipment with machinery. The plaintiff had another building near this, which was called the "Factory Building." The policy insured the plaintiff as

follows: "$2,083.33 on their brick composition-roofed saw-mill building;   *   *   *   $1,666.60 on their machinery of all kinds, both fixed, movable, their settings, parts, and appliances, circular, edging, and butting saws, shafters, gearing, belting, pulleys, hangers, tools, fixtures, mill-wright work, boilers and engines, steam, gas, and water pipes, while contained in said mill building; $1,041.27 on lumber contained in said mill-yard, and on dock attached to said mill premises; $280.80 on lumber in process contained in said mill building." In the light of the circumstances to which we have referred, which were known to the plaintiff, and to the agent at least of the defendant, it is difficult to read the policy as specifying the purposes for which the property was to be used.    The plainer purpose and effect of the term "saw-mill building" was to describe and distinguish the property insured, not to declare the purposes for which only the mill should be used.    *Everett* v. *Continental Ins. Co.*, 21 Minn. 76.    This term of description occurs only in that part of the policy employed to designate the property insured, and the amount of insurance upon it.    It is used in the application only in the same connection.    It would seem, too, from the policy itself, that it was contemplated that the mill would be used for other purposes than the sawing of logs into lumber, and that *lumber* was to be then subjected to some other process of manufacture; for a part of the insurance was specifically on "lumber in process."    The printed clause in the by-laws was therefore inapplicable to limit the use of the property to the purposes of a saw-mill, for the reason that the uses to which it was or was to be appropriated were not "mentioned."    There was therefore no error in this particular of which the defendant can complain.    It follows, too, that it was immaterial whether an increased danger arose from the dry-kilns, if they were a part of the original construction in accordance with the contemplation of the parties. ·

For the reason stated in the first part of this opinion the order refusing a new trial is reversed.