NORTHWESTERN FUEL COMPANY v. BOSTON INSURANCE COMPANY AND OTHERS.[1]

October 22, 1915.

Nos. 19,450—(110).

**Insurance — property in process of construction — coinsurance.**

In an action to determine and apportion the liability of the defendant insurance companies on policies of tornado insurance issued to the plaintiff on the steel superstructure of its dock property situate on the water front at Superior, Wisconsin, it is *held*:

(1) That the court rightly determined that certain policies not purporting to cover subsequent constructions covered property in the process of construction at the time of their issuance; and that certain other policies of like form issued prior to the commencement of the work of construction did not cover such property.

(2) That the court did not err in refusing offered proof as to conversations between the soliciting agents of certain of the insurance companies and the insured relative to matters in connection with the risk covered by the last-mentioned policies.

[1] Reported in 154 N. W. 515.

Note.—As to jurisdiction of equity to adjust losses between concurrent insurance policies on same property, see note in 32 L.R.A.(N.S.) 941.

(3) That a provision requiring percentage coinsurance was satisfied though such coinsurance did not cover all of the property insured by the defendants, it being sufficient in amount and there being no provision that such coinsurance should be concurrent and cover the property as a whole. The insurance policies being Wisconsin contracts, and the governing law of Wisconsin not being pleaded nor proved, and the Minnesota statute being without application, this construction is made without reference to the Minnesota statute or the local law of Wisconsin.

(4) That the "average" or "distribution" clause contained in some of the policies, providing that the amount insured should attach in the proportion that the value of the property covered by the policy contained in each of certain places where located bore to the value of all of it, has no application where the insured property is in one place.

Action in the district court for Ramsey county against 25 insurance companies to recover $125,000 and apportion the same among the respective defendants.

The complaint alleged that there was no controversy as to plaintiff being entitled to receive from some or all of defendants the sum of $125,000, but that a controversy had arisen between the companies comprising the first group and those comprising the second group, so-called, as to the distribution of liability. It also alleged that certain of the companies had paid a part or all of their proportion of the loss, with the understanding that the court would determine the liability of each company, but as they refused to become parties plaintiff to the action, they were made parties defendant in order to obtain a complete adjustment of the liability of each defendant. The respective answers admitted the liability of the defendants to pay the loss occasioned by the tornado in accordance with the terms and provisions of the policy contract of each defendant, and admitted the allegations of the complaint in respect to a dispute between the companies.

The case was tried before Dickson, J., who made findings and ordered judgment in favor of plaintiff against 18 of the companies, and as to the other defendants the action was dismissed.

From orders denying the motions of certain defendants for amended findings or for a new trial, they appealed. Affirmed.

*Stringer & Seymour,* for plaintiff.

*G. W. Buffington, Coudert Brothers, C. O. Carlson, H. J. Swanson, Barger & Hicks, Durment, Moore & Oppenheimer and A. E. Horn,* for defendants.

DIBELL, C.

This is an action in equity to determine and apportion the liability of the defendant insurance companies upon policies of tornado insurance issued by them to the plaintiff. The basis of equity jurisdiction in such cases is stated in Fegelson v. Niagara Fire Ins. Co. 94 Minn. 486, 103 N. W. 495. There were findings for the plaintiff determining that some of the defendants were liable and that some were not and fixing the amount of liability of the companies found liable. Certain defendants appeal from the order denying their motion for a new trial. Other defendants are respondents.

There were 25 defendants and 40 policies. Two forms were used. The description of the property in form 1 was as follows:

"On all steel superstructures consisting of towers, bridges, trolleys and transfer cars, including all machinery, fixtures, equipment and attachments thereto and constituting a part thereof, all situate and contained on their premises at the foot of Hill Avenue at Superior, Wisconsin, and known as Northwestern Fuel Company's Dock Number 1. Permission to make necessary alterations and repairs, and for other concurrent insurance."

The description in form 2 was the same except as to alterations, etc., which was as follows:

"Permission to make necessary alterations and repairs and for additional construction. This policy to cover same, and for other insurance."

The form 1 policies, numbering 15, were issued at various dates from August 11, 1911, to September 22, 1913, most of them, however, in the latter part of 1912. The form 2 policies were executed at various dates from June 10, 1913, to April 6, 1914, but largely in October, 1913.

The plaintiff's dock covered some 40 acres and was located on the water front at Superior, Wisconsin. It was a single dock, but for purposes of convenience was referred to as of three sections. Sections 1 and 2 had been constructed a number of years. On section 1 there were four

bridges. On section 2 there were two towers but no bridges. The portion of the dock proper referred to as section 3 had been in course of improvement by way of filling in and cribbing for several years and in the early part of 1913 was ready for the superstructure. The superstructure is indifferently referred to as section 3 or bridge 5. The contract for the construction was executed in January, 1913. The sills were laid on May 17, 1913, and the false work was constructed on May 23, 1913. The superstructure was completed on July 29, 1913, so far as to be capable of practical operation; but it was operated by the building contractors under an arrangement with the plaintiff until about October 23, 1913, when its operation was taken over by the plaintiff. It was the most modern and extensive of the sections and exceeded both of the others in value. On May 25, 1914, it was damaged by a windstorm. The conceded damage was $125,000.

No question is made but that the form 2 policies covered bridge 5. Nearly all of them were subsequent in date to the completion of the construction and all of them covered additional construction. Four policies of form 1, one dated May 26, 1913, two dated July 11, 1913, and one dated September 22, 1913, aggregating $12,500, were issued after the false work was up and while the bridge was in course of construction. The trial court held that these four policies aggregating $12,500 should contribute in paying the loss and that the other policies of form 1 aggregating $62,500 should not contribute.

The defendants issuing form 2 policies claim that all of the form 1 policies should contribute; and that if they do not there is a violation of the coinsurance clause of the policies. The companies issuing the four form 1 policies, held liable to contribute, claim that they should not contribute. If the form 1 policies all contribute there is no question of coinsurance involved; otherwise there is.

1. The court held that the four policies dated in May, July and September, 1913, should contribute. At the time they were issued the false work was up and the bridge was in process of active construction. The bridge was of structural steel work and the materials were at the time assembled on the dock. When completed it was some 721 feet long and some 131 feet high. The insurance was for a three-year period. In Frost's Detroit L. & W. W. Works v. Millers & M. M. Ins. Co.

37 Minn. 300, 34 N. W. 35, 5 Am. St. 848, the court said:

"The building was in process of construction when the insurance was effected, and the contract of insurance should be deemed applicable, not only to the incomplete structure, but to the building when completed."

It appeared there that the agent of the insurance company actually knew that the construction was in progress. It does not so appear here. It does appear, however, that certain soliciting agents placed practically all of the insurance, both that issued before and that issued after these four policies, and, inferentially at least, that they issued the builders' insurance taken at the time of the commencement of the construction. That construction was in progress when the insurance was written was a matter of notoriety. Insurance companies survey property which they insure. They should not be heard to say, when a loss came a year afterwards, that the insurance had no reference to the superstructure in process of construction.

The court was right in holding that the other form 1 policies, three of which were issued in March and April, 1913, most of them in the latter part of 1912, and one as early as 1911, did not cover bridge 5. The superstructure was then in contemplation and for a portion of the time under contract, but there was nothing in the way of a structure in process of erection. The court adopted a reasonable construction when it held that these earlier policies did not cover the later erection.

2. There was an effort on the part of certain of the companies to prove conversations between the soliciting agents and the assured at the time of the issuance of the policies "in respect to the matters in connection with this risk, for the purpose of enabling the court to get a correct interpretation of the contract." This was upon the theory that the insurance contracts were ambiguous and that a resort to parol evidence was proper within the general rule that where the contract is ambiguous parol evidence as to conversations in explanation is admissible. See 1 Dunnell, Minn. Dig. §3397. The objection was sustained upon the ground that the contracts were not ambiguous. We think the court was correct in its ruling. The proffered proof amounted, at the most, to no more than evidence of conversations made at the time of the issuance of the policies to the effect that they should cover subsequently erected structures. This was not competent. See Frost's

Detroit L. & W. W. Works v. Millers & M. M. Ins. Co., supra. The policies involved no ambiguity subject to explanation by conversations contemporaneous with their issuance.

3. All the policies contained a coinsurance clause as follows:

"It being optional with the assured, and the assured having elected to accept a coinsurance clause in this policy in consideration of a reduced rate of premium, the assured hereby agrees to maintain insurance, during the life of this policy, upon the property hereby insured, to the extent of fifty per cent (50%) of the actual cash value thereof, and that if at the time of the loss the whole amount of insurance on said property shall be less than such fifty per cent (50%) this company shall, in case of loss or damage less than such fifty per cent (50%), be liable for only such portion thereof as the amount insured by this policy shall bear to the said fifty per cent (50%) of such cash value of such property.

"When this clause is attached to and made part of a policy covering two or more items, this clause shall be construed as applying separately to each item of the policy."

The sound value of the superstructures, sections 1, 2 and 3, was approximately $405,000. Section 3 or bridge 5 was of the value of $228,000. The value of sections 1 and 2 was approximately $177,000. The total insurance was $215,000, form 1 policies carrying $75,000 and form 2 carrying $140,000. By the holding of the court that certain policies of form 1 should not contribute, insurance to the amount of $62,500 did not cover section 3, but did cover sections 1 and 2. Insurance to the amount of $152,500, being $140,000 plus $12,500, covered all three sections. Insurance greater in amount than 50 per cent of actual value covered the superstructure as a whole as well as its parts. No quibbling with figures, however, conceals the fact that the companies contributing to the payment of the $125,000 damage lose appreciably because the $62,500 is not applicable thereto. If the $215,000 of insurance contributed, each policy would pay substantially 12/21 of its face. With $152,500 contributing, each policy pays substantially 12/15 of its face. If the coinsurance had been of an amount to make the total contributing insurance 50 per cent of the actual value, each policy would

pay substantially 12/20 of its face. This loss comes because the co-insurance was not made applicable to each part of the whole of the property as the defendants appealing claim it should have been. The plaintiff and the companies issuing form 1 policies not contributing claim that in any event there was 50 per cent coinsurance, for there was that percentage of insurance covering the whole property and covering sections 1 and 2 and covering section 3. The defendants appealing contend that the provision for coinsurance could be satisfied only by insurance covering the whole property the same as did their policies. The question presented is not free of difficulty. It is entirely different from a question of concurrent insurance. A provision for concurrent insurance is a privilege extended to the insured which, as usually framed, results in a forfeiture of the policy if the insured exceeds the privilege. A provision for coinsurance is an obligation imposed upon the insured to keep a specific amount or a percentage of additional insurance in force; and, if he fails to do so, he becomes a co-insurer to the extent of the omitted insurance. There was no requirement that the insurance be concurrent; that is, that it cover all of the property covered by the policies containing the coinsurance clause. The policies did provide that, when the requirement of coinsurance was in a policy covering two or more items, the requirement for coinsurance should be construed as applying separately to each item of the policy. The construction which we are required to adopt is one favorable to the plaintiff and one which will afford it indemnity rather than put it to a loss. We are not cited to authority, nor do we find any, which serves as a precedent or is persuasive as an argument. When the adjustment company representing the appealing companies made the adjustment, it made two computations, one on the basis that all companies contributed ratably, and the other upon the basis that form 2 companies paid all the loss. No question was made at the time that there was a lack of coinsurance, nor does it seem to have been suggested up to the time of action brought. This is perhaps of some though not great importance as a practical contemporaneous construction; but it in no sense amounts to a waiver of the provision in the policies, for at the time of the adjustment a nonwaiver agreement was signed. Nothing that oc-

curred at the trial, as we view it, is of force as a practical construction, though so urged by counsel.

In view of the rule of construction favorable to the insured, the uncertainty of the precise application of the language of the coinsurance clause, and the disfavor with which the law regards provisions for coinsurance, the trial court properly held that the condition as to coinsurance was satisfied.

The insurance contracts under consideration are Wisconsin contracts and the law of Wisconsin is the governing law. They are not to be construed as Minnesota policies would be. Myers v. Chicago, St. P. M. & O. Ry. Co. 69 Minn. 476, 72 N. W. 694, 65 Am. St. 579. It may be conceded that the coinsurance clause would be invalid in Minnesota. G. S. 1913, §3322. The governing law of the policies, that is, the Wisconsin law, is not pleaded nor proved, and we determine the question presented without reference to the local law of Wisconsin or the statute of Minnesota. We make this plain so that confusion will not arise in a subsequent construction of policies governed by the Minnesota statute.

4. Three of the policies contained an "average" or "distribution" clause as follows:

"It is understood and agreed that the amount insured by this policy shall attach in each of the above named premises in that proportion of the amount hereby insured that the value of property covered by this policy contained in each of said places shall bear to the value of such property contained in all of above named premises."

This clause has no application to the present situation. It can apply only when different portions of the insured property have different locations. If the policies had covered the superstructures on the company's docks across the harbor at Duluth along with those on its Superior docks there might then be an argument for its application. There is none now.

Order affirmed.