## CORSICANA WAREHOUSE CO. v. NORTH RIVER INS. CO.   (No. 680–4582.)

(Commission of Appeals of Texas, Section B. Nov. 17, 1926.)

1. **Appeal and error ⬠931(4)—New contract, superseding old contract, is presumed to have been found by trial judge, under judgment upholding settlement of fire loss, based on conflicting evidence.**

Where judgment of trial court, upholding written settlement adjusting fire loss, was based on conflicting evidence as to whether it contained good consideration, and no objection was made to judgment on such ground, it is presumed that trial judge found that settlement was duly made whereby new contract was made superseding old contract.

2. **Insurance ⬠579—Agreement by insured to accept less sum than amount claimed in satisfaction of fire loss constituted new contract binding on insurer.**

Agreement by insured with adjuster to accept sum tendered in satisfaction of its claim, whereby insured relinquished right to demand greater sum, was based on valid consideration, and constituted new contract obligating insurer to pay fire loss in accordance with terms of settlement.

3. **Insurance ⬠579—Adjustment of loss under fire insurance policy creates new contract on which action for recovery of loss is based (Rev. St. 1925, art. 5065).**

When adjustment of fire loss has been fully completed and agreed to, new contract arises to pay amount of adjustment, and action for recovery of adjusted loss is suit, not on policy, but on new contract, in view of Rev. St. 1925, art. 5065.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Corsicana Warehouse Company against the North River Insurance Company. Judgment by the district court for plaintiff was reformed by the Court of Civil Appeals (281 S. W. 217), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

Richard & A. P. Mays, of Corsicana, for plaintiff in error.

Thompson, Knight, Baker & Harris, of Dallas, for defendant in error.

SHORT, J.   The opinion of the Court of Civil Appeals in this case is to be found in 281 S. W. 217. It is a suit originally filed in the district court of Navarro county by the Corsicana Warehouse Company, upon a policy of fire insurance for $4,000, executed by the North River Insurance Company, covering a cotton warehouse in Corsicana. The case was tried by the court, and judgment was rendered for plaintiff in error for the full amount of the policy. The purpose of the suit was to enforce against defendant in error, not only liability upon the insurance policy but upon a written contract of settlement of the loss and damage sustained thereunder for the sum of $4,000. Upon the trial, the district court awarded judgment in favor of plaintiff in error for the sum of $4,190 being the principal of the policy and the accrued interest. Findings of fact and conclusions of law were filed by the trial judge. which were not excepted to by the defendant in error, nor are there any assignments by defendant in error attacking the findings of fact as being without support in evidence. The Court of Civil Appeals reformed the judgment of the trial court by reducing the recovery to $1,135.98 with interest from October 20, 1922, and otherwise affirmed the judgment of the trial court, and writ of error has been granted by the Supreme Court and submitted to this section of the Commission for disposition.

The defendant in error defended in the lower courts upon the ground that the evidence conclusively shows that it was entitled to have the policy corrected on the ground of mutual mistake, and to have attached thereto a rider known as "distribution average clause," which would make the liability under the policy and the loss sustained amount to $1,135.98; and also upon the ground that no recovery could be had because there was no proof of loss as required by the policy. The property destroyed by the fire consisted of a warehouse containing five compartments separated by brick walls, the whole being a one-story brick building about 250 feet square. There was no difference in the value of the separate compartments, except that each of the end compartments was charged with the entire outer wall and one-half of the partition wall, whereas the interior compartments were each charged with one-half of the partition wall on either side, amounting to one partition wall chargeable to each interior compartment as against a wall and one-half charged to the end compartments. Under the rules of the state fire insurance commission, the building came within a classification which required that blanket policies written thereon should contain what is denominated the "distribution average clause," the effect of which was that the total amount insured by the policy should be distributed among the several divisions of the building in the proportion that the value of each division thereof should bear to the aggregate value of the entire subject insured. At the time of the fire, plaintiff in error held altogether $12,000 insurance on the property, which was distributed between four companies, including defendant in error; the other policies being one for $4,-000 and two for $2,000 each. Each of the other policies had attached to it a rider containing the distribution clause, but no such

rider was attached to the policy.in suit. The distribution average clause above mentioned is as follows:

"It is understood.and agreed that the amount insured by this policy shall attach in or on each building or division thereof in such proportion of the amount insured that the value in or on each building or division thereof bears to the aggregate value of the subject insured."

Each of these policies, under the facts of this case, is what is known as a blanket policy, which is one covering under one item buildings separated by fire walls.

The findings of fact and conclusions of law filed by the trial judge are copied in the opinion of the Court of Civil Appeals, but, in the view we take of the question discussed by us, these findings of fact become immaterial. The fire occurred on October 13, 1922, and thereafter one Cole, a representative of the Bates Adjustment Company, went to Corsicana for the purpose of adjusting the loss. He represented each of the four companies involved. The fire did considerable damage to one of the end compartments and a small damage to the adjoining one. The parties each had a contractor to estimate the damage. The plaintiff in error contended that it had been damaged by the fire to the extent of $10,590, that being the amount estimated by the contractor employed by the plaintiff in error. The defendant in error employed another contractor, who placed the damage at $7,896, but the loss was finally adjusted at $6,271.96. The court found the value of the entire building to be $60,000, and the total amount recoverable in any event under the three concurrent policies was $2,271.96. There was a conflict in the testimony by the adjuster on the one side and the president and manager of plaintiff in error on the other as to whether the adjuster agreed that defendant in error would pay the full amount of its policy. The trial court found the agreement was made as plaintiff in error contends. The Court of Civil Appeals found that this agreement was without consideration. The $2,271.96 was paid by the other companies, and, upon the trial, the defendant in error accepted as true all the facts and took advantage of all the information furnished by the adjuster except the agreement made by the adjuster that the defendant in error should pay, as a part of the loss agreed upon as having been sustained the sum of $4,000, contending that it was entitled to have the policy corrected on the ground of mutual mistake, and that its part of the loss was as found by the Court of Civil Appeals. The Court of Civil Appeals finds with reference to the proof of loss that this was waived by the defendant in error, and the testimony is ample to support this finding, and hence this contention passes out of the case. We also think that the other contention is not material to the decision of the case; that is to say that the evidence shows that the de-

fendant in error was entitled to have the policy corrected on the ground of mutual mistake and to have attached thereto a rider known as the distribution average clause which would make the liability under the policy and the loss sustained amount to $1,-135.98, for reasons which we will discuss.

[1] The seventh and eighth assignments of error in the application for the writ of error challenge the correctness of the opinion of the Court of Civil Appeals in holding that the contract of settlement, which was in writing, duly signed, whereby a settlement was effected of the controversy was without consideration, both of which assignments of error we sustain upon the ground that there was a conflict in the testimony on this subject, and, the trial having been to the court and a judgment having been rendered in favor of plaintiff in error for the full amount claimed under and by virtue of the terms of settlement, and there having been no objection filed to the judgment upon this ground, it is presumed that the trial judge found that a contract of settlement was duly written, signed, and delivered, whereby a new contract was made between the parties, thereby superseding the old contract, whatever it may have been, and the rights of the parties were fixed in accordance with the terms of this new contract. There was evidence upon which the trial judge could base his finding of fact that there was a consideration for the agreed settlement, the tenor of which was that the damage sustained by the plaintiff in error was in excess of that finally agreed on as a basis of settlement, and that the agent of the defendant in error represented to the plaintiff in error that the total amount collectible, irrespective of the damage sustained, was $6,271.96, of which defendant in error would pay $4,000. There was also testimony upon which the trial court could have based its finding of fact that these representations so made by the agent were in fact untrue, but that the plaintiff in error agreed to forego its right to recover from the insurance companies a greater amount under all of said policies as well as to avoid the expense and delay of a lawsuit. The testimony is also sufficient to base the finding of the trial judge that this agreement, made between the plaintiff in error and the agent of all the insurance companies, embraced one proposition, and related to each and all of the insurance companies, to the effect that, if the plaintiff in error would agree to accept $6,271.96, this amount would be paid by the four companies, and of this amount the defendant in error would pay $4,000. Furthermore, the record is sufficient to justify the finding of fact by the trial judge that, though the plaintiff in error contended its loss had been much greater than that to which it finally agreed it was, it believed that it could obviate a lawsuit and get the money without delay, and therefore it relin-

quished its claim of a larger loss, and accepted a smaller one, upon the faith of the false representations made to it by the agent of the insurance companies that, irrespective of the damage sustained, the plaintiff in error could only recover this amount, but that, if it would accept this amount, the defendant in error would pay $4,000 of it. The supplemental petition of the plaintiff in error contains this allegation:

"The defendant sent its agent and representative to Corsicana with full power to adjust and settle said loss sustained by plaintiff under the terms of the policy contract, made and entered into between plaintiff and said defendant. That defendant's said agent took expert testimony, as to the amount of said loss, and plaintiff did likewise, and later plaintiff, through its representatives, and defendant, through its representative, adjusted said loss, and the amount thereof was agreed upon, and the liability of defendant to plaintiff was agreed on as being $4,000, the amount of said policy. That said adjustment and settlement was in writing, being written by the agent and representative of defendant as well as other insurance companies, and at his instance, plaintiff signed said agreement of settlement, which was retained by the agent, which is now or should be in the possession of the defendant, and defendant is now notified to produce said writing upon the trial of the case, otherwise secondary evidence will be offered as to its contents."

This written agreement was not produced and its contents were proven and accepted as having been proven upon the trial, and the agent of the insurance companies denied its execution and delivery. Since the Court of Civil Appeals, in its opinion, has held that this agreement was without any consideration, we embrace in this opinion the following testimony taken from the record on the subject:

Mr. Guy M. Gibson, president of plaintiff in error, testified in its behalf as follows:

"A gentleman, representing himself as being an adjuster for the insurance companies involved came to Corsicana to adjust the loss, including that of defendant in error, the North River Insurance Company. The adjuster and Kenner came to my office. We had been after the local agent for several weeks to get him to come down, which he finally did. When he came to my office he said he was authorized to adjust the loss and wanted to know if I was authorized to go into the adjustment matter with him, and I told him I was. He called for the policies, and Kenner produced them, and we looked them over, and we discussed the loss. I had some builders to figure on the loss we had, and he had some parties to figure on the loss for the insurance companies. We compared notes, and I was higher than he was, and he finally took my policies and he said, 'Mr. Gibson, you can't contend for this; you can collect $4,000 from the North River Company, and so much on this policy, and so much on this policy, and all I can do for you is sixty hundred odd dollars on all the policies, because that is all you can collect.' I finally said, 'All right, if that's the case I guess I better accept it;' and he made his figures in con-

formity with what he said, and I signed it as president of the warehouse company, and I thought it was settled. The adjuster admitted that the liability of the defendant in error was $4,000. The adjuster (Cole) prepared the statement for the settlement himself; he did the writing, as representing the insurance companies. He said he would send me the checks in conformity with the agreement. In pursuance of that agreement, the other companies paid the warehouse company, but defendant in error failed to do so. The adjuster got impatient with me for insisting for a lot more than he said we could collect under the policies. He said, 'Here's your policies, and that's all you can collect—so much under this one, and so much under this one, and so much under this one, and $4,000 under the North River policy, and there is no use haggling about it. Why not adjust it this way?' I said, 'All right, sir, sign her up;' and he said, 'I want you to do the signing; I want you to accept this;' and I just signed up. It was a long piece of work, and we wanted to get through. I know he said he was authorized to make a settlement, and I thought he was settling it, and I thought the loss was settled, and he just said to me, 'Now, I make my report to these companies; the general agents who sent me out, and these various companies will send you checks in conformity with my reports;' and I expected the checks to come instead of a lawsuit. I never saw the adjuster any more. I expect we were dealing with the adjuster about an hour in closing up the settlement. I don't recall all the figures on the piece of paper I signed up with Cole, but on one side was a list of the policies and the liability under the policies; that is, the collectible amount of the policies, added up, and on the other side we had the adjustment—the loss we had sustained. I was contending for so much, and he finally said that we couldn't get it anyway, because that is all you can collect under your policies—so much under this one, and so much under this one, and so much under this one, and $4,000 from the North River Company—it hasn't got the distribution average clause in it, and you ought to collect the full amount, the face of the policy, because there is the contract, and that makes a total of $6,200 and some odd dollars; and he said: 'Will you accept this for the warehouse company?' and I told him, 'Yes; if that's the best we can do;' and he pushed over the paper to me with those figures on it, and I signed it 'Corsicana Warehouse Company,' by myself as president, and I handed it back to him. He asked me to sign it officially. I have never seen it since that time. I didn't say that the paper Cole handed me to sign had figures on both sides of the sheet. It had a list of the policies over here, and what we could collect over here; a list of the policies over here, and our loss here, and the loss was greater than the amount we could recover from the insurance companies. Based on the total liability of the insurance companies, and our loss, there was a discrepancy between those figures. Cole said that those policies that had the distribution average clause in them carried so much insurance on each of the compartments, and that we could collect only the proportionate part of a compartment which suffered loss under the policies containing the distribution average clause, and that the policy that did not have that distribution average clause in it we could collect the

full mount, and consequently we could rely on $4,000 for those two damaged compartments under the North River policy. 'You can collect, Mr. Gibson, only this $6,271.96 from these policies, and there is no good of us going into any further loss, because this is all the warehouse company can recover.' I have looked through all the papers exhibited here on the trial by the insurance company, but I don't find among them the written contract of settlement which I signed."

W. R. Kenner, general manager of the plaintiff in error, testified as follows:

"That he went with Cole, the adjuster, to Gibson's office, and they figured there, and Gibson wanted more money than Cole wanted to give us, and Cole finally said: 'What's the use of wanting more money? If I gave you $7,-000, it wouldn't mean anything, because this is all that the policies call for.' And they finally agreed, and Cole undoubtedly gave Mr. Gibson a piece of paper, and Mr. Gibson signed it. Cole figured out the amount due by each company, and apportioned it among them. He apportioned $4,000 as being due by the North River Insurance Company. He handed a paper to Mr. Gibson to sign for the warehouse company, which he did at his desk, and returned it to Cole. During the settlement talk, Cole mentioned the distribution average clause in the other policies, and he said we had to settle with the other insurance companies on that basis. I saw Cole's figures. I know we had four policies, two for $4,000 each and two for $2,000 each, making $12,000, and we were contending for that amount of money. Cole told us that with the application of that distribution clause on the other three policies we could only successfully contend for $6,271.96. Mr. Gibson thought we ought to have more than that, and then he said if that's all the policies called for and that's all he could get, he might as well sign Cole's paper and quit, which he did. We finally agreed on a settlement as shown in the paper that was finally signed, and if you can get hold of that paper, you will know what we agreed on. Cole said there was no use asking for more than $6,271.96. The piece of paper that was signed came out of Cole's hands. Mr. Gibson put his name on it for the warehouse company; and the paper was this long (indicating), and had figures on it. I settled some cotton damage with Cole, but that was not for the warehouse company; people who had cotton stored there could get it insured. Cole was here off and on for three or four days adjusting the cotton loss and the loss on the building. Cole had the four policies right before him in Gibson's office when they were settling the matter."

[2] It will thus be seen that, by the estimate of the damage sustained by the plaintiff in error, amounting to $10,590, for the reasons heretofore stated, the plaintiff in error executed this agreement and thereby relinquished its right to have the loss adjusted at a sum greater than that to which it agreed in the amount of $4,318.77 according to the estimate placed upon the damage by the contractor employed by the plaintiff in error, though in fact the record shows that the plaintiff in error estimated its damage at $12,000. After the amount of damage was agreed upon, as above stated, the adjuster himself approved said amount as against the several companies, with which the plaintiff in error had nothing whatever to do. If plaintiff in error had not surrendered the damages claimed by it as a result of the fire, in excess of $6,271.96, it would have been entitled to recover against the other insurance companies as well as against defendant in error, even if the distribution average clause should have been considered as a part of its policy, considerably more than the other insurance company paid it and more than that allowed in the opinion of the Court of Civil Appeals against defendant in error on its holding that the distribution clause should be considered a part of the policy. In other words, by making the agreement to accept the sum tendered in satisfaction of its claim, the plaintiff in error relinquished its right to demand a greater sum, and there was a consequent loss to the plaintiff in error and a corresponding benefit to all of the four insurance companies represented by their agent. The authority of this agent to represent each of the four companies in the adjustment of the loss and the making of the agreement is not questioned by any of the pleadings or testimony. Three of the companies settled on the basis of the agreed settlement, and the defendant in error did not attempt to repudiate the settlement in whole, but accepted and used the information obtained by its agent, only defending upon the proposition of mutual mistake in the execution of the policy. Neither mistake, accident, nor fraud was claimed by defendant in error in the execution of the settlement. The defense was that no contract of settlement was made. Neither was the authority of the adjuster to make the contract legally denied in the pleadings nor attempted to be proven by any testimony. The statute provides:

"That a written instrument upon which a pleading is founded is without consideration, or that the consideration of the same has failed in whole or in part shall be verified by affidavit."

[3] No such pleading was filed in this case. When an adjustment has been fully completed and agreed to by both parties a new contract arises to pay the amount agreed upon as the result of the adjustment, and the action for the recovery of the adjusted loss is a suit, not upon the policy, but upon such new contract. 26 C. J. p. 413. An adjuster is defined to be:

"One whose business it is to ascertain the loss and agree with the assured on a settlement; one who determines the amount of a claim, as the claim against an insurance company; the person who makes the adjustment or settlement." Article 5065, R. S. 1925; 1 C. J. p. 1237.

Being of the opinion that there was a sufficient consideration for the making of the settlement by the terms of which the defend-

ant in error was to pay the plaintiff in error $4,000, which constituted a new and valid contract between the parties, we are of the opinion that the judgment of the Court of Civil Appeals should be reversed and that of the district court affirmed, and we therefore recommend that this be done.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed and that of the district court affirmed, as recommended by the Commission of Appeals.