### ST. PAUL FIRE & MARINE INS. CO. et al. v. LIPSITZ et al.   (No. 496.)

Court of Civil Appeals of Texas. Waco.
May 5, 1927.

Rehearing Denied June 2, 1927.

1. **Insurance** ⟺501—Distribution average clause held inapplicable to inflammable buildings, adjoining or so close as to expose each to danger of fire in other; "fire division."

Clause in fire policies, that amount should attach on each building or "fire division" thereof in proportion of value thereon to aggregate value of subject insured, *held* inapplicable to inflammable buildings, adjoining or in such close proximity as to expose each to danger of destruction by fire originating in other; "fire division" describing one or more fireproof compartments in same building.

2. **Insurance** ⟺501—"Adjoining" buildings declared one fire risk held to include buildings connected by wooden fence and so close as to expose all to danger of fire in any one.

"Adjoining" which means in literal sense contiguous or touching in whole or part, *held* to mean, as used in fire policy declaring all adjoining buildings one fire risk, not within distribution average clause, buildings connected with each other and merchandise stored outside by wooden fence and in such close proximity as to expose all to danger of destruction from fire originating in any one.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adjoining.]

3. **Appeal and error** ⟺231(9)—Appellants not indicating error in charge cannot complain thereof.

Insurers not indicating error in charge, objected to as not correctly stating elements of "single fire risk" defined therein, but contending that each building and contents thereof constituted separate risks within distribution average clause, could not complain of such error on appeal.

Appeal from District Court, Limestone County; W. T. Jackson, Judge.

Actions, consolidated for trial, by Louis Lipsitz and another, partners trading in the name of the Groesbeck Lumber Company, against the St. Paul Fire & Marine Insurance Company and against the Republic Insurance Company, respectively. Judgments for plaintiffs, and defendants appeal. Affirmed.

Senter & Strong, of Dallas, for appellants.
J. L. Goggans and B. O. Baker, both of Dallas, and Mr. and Mrs. C. S. Bradley, of Groesbeck, for appellees.

GALLAGHER, C. J. Appellees Louis Lipsitz and Mrs. Fannie Harris, a widow, partners trading in the name of the Groesbeck Lumber Company, instituted in the district court of Limestone county a suit against appellant St. Paul Fire & Marine Insurance Company to recover on a $2,500 fire insurance policy. They at the same time instituted in said court another suit against the Republic Insurance Company to recover on a $5,000 fire insurance policy. Said suits were by agreement of all the parties consolidated and tried together. The property insured is described in each of the policies sued on as follows:

"On office building, warehouse, stables, platforms, sheds, and fences; and on lumber, lath, shingles pickets, posts, timbers, sash, doors, blinds, mouldings, window glass, nails, mixed and dry paints, lime, hair, cement, coal, wire, plaster, building paper, and such other merchandise as is usually kept for sale in retail lumber yards; * * . * on . tools, implements, utensils, scales, harness, feed, and vehicles; * * * on horses and mules; * * * on office furniture and fixtures, stationery, office supplies, and safe; all only while contained in assured's buildings and yard, or in cars in assured's yard, or within 100 feet thereof."

Each policy so sued on contained, among other stipulations, the following:

"Distribution Average Clause.

"It is understood and agreed that the amount insured by this policy shall attach in, or on, each building, or fire division thereof, in such proportion of the amount insured that the value in, or on, each building, or fire division thereof, bears to the aggregate value of the subject insured.

"Note—In cases of loss all buildings adjoining and communicating through parapetted walls provided with nonstandard cut-offs at any or all communicating openings, or with wall to roof only, where the construction is of adobe, brick, stone, concrete, concrete blocks, or hollow tile, shall be considered one fire risk, and not subject to the terms and conditions of the distribution average clause."

There is no dispute about the facts. The only issue involved is whether the provisions of said clause above quoted should be applied in determining the amount of appellees' recovery.

Appellees' lumber yard was rectangular in shape. It was 100 feet wide and 150 feet long. It was bounded on the west or front end by a street, on the south side by a street, on the east end by the railroad right of way, and on the north side by property belonging to other parties. There was situated on the north side of said lot a wooden frame building covered on sides and roof with corrugated iron. This building extended the entire length of the lot from west to east. It was 20 feet wide at the base and had a hood 8 feet· wide extending toward the south. A

small part of this building at each end was inclosed so as to form separate rooms with walls both to the south and east and south and west, respectively. The remainder or central part of this building was open toward the south and used as a lumber shed. South of said building was a vacant strip 15 feet wide, extending the entire length of the lot and used as a driveway. Immediately south of this driveway was a space approximately 22 feet wide, extending the entire length of the lot. The west end of this space was occupied by an office building and storeroom extending eastward approximately 30 feet. The east end was occupied by piles of fence pickets and house blocks stored in the open. The center part was vacant. Immediately south of this space there was another driveway extending entirely through the yard from west to east. At the southeast corner of the remaining space was situated another frame building with sides and roof covered with corrugated iron. It was 40 feet long and 20 feet wide, with a hood 8 feet wide extending northward. The center of this south space was occupied by heavy lumber piled in the open and the west end of the same by stacks of shingles also in the open. There was at the time of the fire merchandise in the storeroom attached to the office building and in each of said other buildings, and also in the open as above stated. To recapitulate, the two driveways divided the yard into three separate sections, one on the north, one in the middle, and one on the south, varying in width from 22 to 28 feet. A wooden picket fence located on the outside lines of the lot inclosed the same except where the buildings were situated, and said fence was joined to each building on each side thereof. Said driveways were provided with wooden gates at each end. These gates were hung on rollers running on an iron track extending across the driveway and to the side thereof far enough to allow an opening sufficient for the free passage of vehicles. Said track was attached to an overhead wooden construction extending across such opening. All said gates were kept closed at night. The fire which inflicted the damage complained of occurred at night. It originated on premises north of appellees' yard and was communicated therefrom to the building on the north section of said yard. It consumed said entire building and the merchandise stored therein, part of the fence immediately adjacent thereto and inflicted a small amount of damage on the lumber piled in the open at the middle of the south section. Almost the entire loss, however, was sustained by reason of the destruction of the building situated on the north section and the merchandise contained therein. If the provisions of said clause above quoted are not applicable, under the agreed facts appellees are entitled to the respective amounts recovered by them herein, but if said clause is applied in determining appellants' liability, respectively, appellees are entitled to materially smaller recoveries.

The consolidated case was tried to a jury. The court submitted to the jury for determination only one issue, as follows:

"Did the property covered by the policies involved in this consolidated suit, constitute only one fire risk within the intent and meaning of such policies? Answer 'Yes' or 'No.'

"In answering the foregoing issue, you are instructed that if the entire property covered by the policies was of such nature and was so located with respect to the several parts of same that an ordinary person, under all the circumstances, would reasonably have anticipated that the destruction of any part of such property by fire ordinarily would have resulted in the destruction of the whole of said property, under usual and ordinary conditions and circumstances, then it would constitute 'only one fire risk,' and you should answer the issue 'yes'; but if the entire property covered by the policies was of such nature and was so located with respect to the several parts of same that an ordinary person, under all the circumstances, would not reasonably have anticipated that the destruction of any part of such property by fire ordinarily would have resulted in the destruction of the whole of said property, under usual and ordinary conditions and circumstances, then it would not constitute 'only one fire risk,' and you should answer the issue 'No.'"

Appellants objected to the charge of the court, the substance of such objections being: (a) That said clause was in writing, was plain and unambiguous in its terms, and should be construed by the court as a matter of law; (b) that, since the facts were undisputed, it was the duty of the court to apply the provisions of said clause thereto, and that there was nothing to submit to the jury; (c) that the elements of a single fire risk were not correctly stated in said charge. The supposed error in the definition of a "single fire risk" was not indicated. The court overruled all said objections and submitted the case on said single issue. The jury answered the same in the affirmative. The court in pursuance of the verdict of the jury rendered judgment against appellant St. Paul Fire & Marine Insurance Company in the sum of $2,112.54, and against appellant Republic Insurance Company in the sum of $4,225.08. Appellants join in this appeal and present said respective recoveries for review.

### Opinion.

Counsel for appellants have cited only one case bearing on the issue here involved, and that is North River Insurance Co. v. Corsicana Warehouse Co. (Tex. Com. App.) 288 S. W. 137. Counsel for appellees have cited only two cases bearing on such issue. The cases so cited are Mountain Timber Co. v. Lumber Insurance Co., 99 Wash. 243, 169 P. 591, and Northwestern Fuel Co. v. Boston Ins. Co., 131 Minn. 19, 154 N. W. 515. Counsel for both appellants and appellees state that

they have made diligent search and have been unable to find any other authorities bearing on this issue.

The property covered by the policy in North River Insurance Co. v. Corsicana Warehouse Company, supra, was a large warehouse, divided into five separate fireproof compartments. No insurance on contents was involved. The fire occurred in one of the end compartments and inflicted material damage thereto. Said fire also damaged the partition wall between said end compartment and the one adjoining, but did no other material damage to said inside compartment. The court in that case merely applied the provisions of said clause in determining the amount of recovery awarded to the insured, and such application was not questioned either in the Court of Civil Appeals (281 S. W. 217), or in the Supreme Court (288 S. W. 137).

The case of Mountain Timber Company v. Lumber Insurance Company, supra, involved the construction of a provision similar to the one here under consideration. The policy in that case covered the entire stock on hand of every description incidental to a lumber manufacturing plant. The size of the mill site is not shown. The clause incorporated in the policy in that case was as follows:

"It is understood and agreed that in event of loss this insurance shall attach to the property herein described in the different * * * locations in the exact proportion that the value of the property in each * * * location shall bear to the value of the property in all such * * * locations at the time of the fire."

There was a loss by fire. The court in that case construed said clause, as applied to the facts therein, as follows:

"Of the property destroyed by the fire and concededly within the terms of the policy the appellant claims a reduction because of the average clause contained in the policy. It was shown that the stock of lumber and other material on hand at the time of the fire were stored at some four different places on the mill site, and that these were not all destroyed by the fire. The appellant contends that each storage place consisted of a different location within the meaning of the average clause of the policy, and hence the insurance should be apportioned in the ratio that the value of the destroyed part bore to the value of the entire quantity. The court found that the material destroyed was all on the mill site, and that the mill site was one entire location within the meaning of the policy. The evidence showed that a part of the property insured was at a place called the cargo dock on the extreme north end of the mill site, a part of it at a place called the loading dock at the extreme south end of the site, a part of it on a dock immediately next to the mill building, and a part of it in the mill building, all being used in one connection. The part saved was on the loading and cargo docks, while that in the other places named was destroyed. It seems to us that these were but separations incident to the business, which the insured was con-ducting, and since they were all on the mill site, were one location within the meaning of the policy, and no more separate than they would have been had the material been placed in a number of separate piles side by side with a passageway between them. It is plain from the language of the clause in question that the purpose of the parties was not to average the loss where the property in part destroyed was in one location. It is equally plain from the nature of an extensive lumber manufacturing plant that all of its stock cannot be conveniently kept in one pile. The parties therefore must have contemplated individual separations, or separations arising from the necessities of the business and used the language with reference to distinct and separate sites rather than to separations on a single site. Contracts of insurance, unless the language is so plain as to otherwise forbid, must be construed reasonably, and in accordance with the evident intent of the parties to it. In our opinion it would not be a reasonable construction or a construction according to the intent of the parties to hold from the language here used that the parties thereto contemplated that the insured stock should be treated as in separate locations merely because it was placed in individual piles on the general mill site, yet we must so hold if the appellant's contention is to be sustained. Our conclusion is that the trial court ruled correctly upon the question."

The case of Northwestern Fuel Co. v. Boston Ins. Co., supra, involved an issue of tornado insurance. The property insured was all described as being situated and contained on premises of the insured at the foot of Hill avenue, at Superior, Wis., and known as dock No. 1. The distribution clause involved was substantially the same as the one last above quoted, except that the word "premises" was used in each instance instead of the word "location." The dock on which the property so insured was situated consisted of 40 acres of land and was divided into three sections. The property located on section 3 was more valuable than the property on both sections 1 and 2. The property insured was seriously damaged, but the amount of damage on each section, respectively, was not shown. The application of said clause was invoked. Such application was denied by the court in the following language:

"This clause has no application to the present situation. It can apply only when different portions of the insured property have different locations. If the policies had covered the superstructures on the company's docks across the harbor at Duluth along with those on its Superior docks, there might then be an argument for its application. There is none now."

[1] The "distribution" clause inserted in the policies sued on in this case could, in no event, have more than a partial application. By its own terms it applies only to buildings and their contents. The entire property insured is covered in gross, without distinction between buildings and contents, and without distinction between merchandise

stored in buildings and merchandise stored in the open on the yard or in cars in or near the same. Neither is there any distinction between the buildings and the stock of merchandise partly in and partly out of the same and the fences and live stock also covered by said policies. If all of said property, by reason of its situation, was subject to a like fire hazard, and if all the same was reasonably subject to destruction by fire originating in or communicated to any part of said yard, we can see no reason for such a distribution. We think a consideration of said clause as it appears in these policies excludes any construction which would make it applicable in this case. The clause proper applies to each building or "fire division" thereof. While the term "fire division" is not defined either in said policies or in any authority cited by counsel in this case, we think it is reasonably apparent that such term is used to describe one or more fireproof compartments in the same building, such as were involved in North River Insurance Co. v. Corsicana Warehouse Company, supra. This conclusion is rendered reasonably certain by the note appended to and made a part of said clause. Said note deals only with adjoining buildings constructed of one of the several fireproof materials enumerated therein and insured together for one gross sum. Such buildings are excluded from the operation of the clause notwithstanding the walls extend through and .above the roof, forming what is called in said note a "parapetted" wall, if there is a communicating opening in the dividing wall not closed by a stardard cut-off, thus exposing each building to damage or destruction from a fire originating in the other. Such buildings are also excluded from the operation of said clause, notwithstanding they are constructed of such fireproof material, if the dividing wall extends only to the roof and not through the same, thereby leaving the roof to act as a fire carrier from one such building to the other. By the express terms of said note, all buildings so situated and so constructed are declared to constitute a single fire risk. Clearly, adjoining buildings constructed in whole or in part of inflammable material such as wood and insured in a gross sum are not within the purview of said clause, since each is fully exposed to danger of destruction from a fire originating in the other. Like reasoning necessarily excludes from the operation of said clause wooden or other non-fireproof buildings so insured, though they do not in fact adjoin, if situated in such close proximity that each is exposed to such danger.

[2] It is true, the several buildings situated on appellees' lumber yard did not adjoin each other, in a literal sense. "Adjoining," when used in a literal sense, means contiguous or touching in whole or in part. The connection in which such word is used sometimes requires that it be given a broader meaning. The Supreme Court of the state of New Hampshire, in the case of Marsh v. Concord Mutual Fire Insurance Co., 71 N. H. 253, 51 A. 898, held on a question of coverage that buildings separated by intervening spaces several feet in width were all included in the description, "frame mill buildings and all additions thereto adjoining and communicating," when all such buildings were used in connection with each other and constituted a necessary part of the plant insured. Said several buildings on appellees' yard were, however, connected with each other and with the several piles of merchandise stored in the open at different places on the yard by an efficient fire carrier in the form of a wooden fence. Besides, it appears that all such buildings and such piles of merchandise in the yard were situated in such close proximity to each other as to expose all the same to danger of destruction from a fire originating in any one of them. There was affirmative evidence that said lumber yard was rated as a single risk in the schedules promulgated by the state fire insurance commission.

[3] The jury, under a charge defining the term "single fire risk" in substantial accord with the views hereinbefore expressed, found that the entire property covered by the policies sued on constituted a single fire risk. While appellants objected to said charge on the ground that the elements of a single fire risk were not correctly stated therein, they did not indicate the supposed error but rested on their contention that each building and the contents thereof constituted separate risks under the letter of the clause under consideration, regardless of whether the entire property covered was directly exposed to danger of destruction from a fire originating in any other part of such property. The sufficiency of the evidence to support the finding of the jury, under the definition of a single fire risk as given in the court's charge, was not assailed in the trial court, nor is it questioned by any assignment of error presented by appellants for our consideration in this appeal.

We conclude that no reversible error is shown, and that the judgments rendered by the trial court against appellants, respectively, should be affirmed.