HENRY W. PEABODY & others vs. LIVERPOOL AND LONDON
AND GLOBE INSURANCE COMPANY.

Suffolk.   November 15, 16, 1897. — May 19, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Marine Insurance — Construction of Policy — " Specific Insurance."*

A policy of marine insurance, issued under an agreement with the assured by
which all merchandise belonging to him shall be insured from the moment that
it becomes his property in a certain place until forty-eight hours after the dis-
charge of the vessel in the port of delivery, although, while the rate of premium
is fixed, the exact amount of the insurance and of the premium cannot be
known until the receipt of the invoice, which sometimes is not until several
days after the arrival of the vessel, is a contract for "specific insurance" on
each cargo.

CONTRACT, upon a policy of insurance for $10,000, against loss
by fire on property of the plaintiffs in Boston, for one year from
July 31, 1895.   Trial in the Superior Court, before *Hopkins*, J.,
who directed the jury to return a verdict for the plaintiffs ; and,
at the defendant's request, reported the case for the consideration
of this court.   The facts appear in the opinion.

The case was argued at the bar in November, 1897, and
afterwards was submitted on briefs to all the justices.

*W. C. Loring & R. S. Gorham*, for the defendant.

*H. M. Rogers*, for the plaintiffs.

LATHROP, J.   The question in this case is whether the policy
declared on attached to the goods which were destroyed by fire
on September 4, 1895.   The description of the property insured
was set forth in a rider pasted to the policy, which contained
the following clause : " It is further declared and agreed that
goods on which the insured have specific insurance are not cov-
ered in whole or in part by this policy, and that the same is not
intended to attach to such goods in whole or in part."

The plaintiffs had other insurance by two marine policies,
which covered the goods at the time of the loss, and these com-
panies have paid what belonged to them to pay according to the
terms of each policy ; but the actual loss suffered by the plain-

tiffs amounted to more than the sums thus paid, and if the defendant's policy attached, it is liable to pay $1,830.50, with interest. If the insurance effected by the marine policies is "specific insurance" then the defendant is not liable; otherwise, the policy attached.

Before proceeding to discuss the nature of the other insurance, we may briefly consider the policy declared on. It is designated on the back thereof, "Floating Policy." As was said by the court in *Fairchild* v. *Liverpool & London Ins. Co.* 51 N. Y. 65, 69, it is "intended to cover property or value which cannot well be covered by specific insurance from the circumstance that it is changing in quantity or location. The ordinary purpose of such a policy is to supplement specific insurances and to cover values not covered by them. Here the plaintiffs' property would sometimes be in one warehouse and sometimes in another, and sometimes on wharves or *in transitu* over the streets, and sometimes above the specific insurances and sometimes under them in value. Hence, the necessity for this floating policy to attach to the property wherever it might be, and in all cases when it happened to exceed the specific insurances."

There are two kinds of floating policies in use, one as in the case before us which does not attach at all to goods covered by specific insurance, and the other, which was the one before the court in the New York case above cited, which insures goods covered by specific insurance for the excess in value above the amount of the specific insurance. The language of the court must be construed in connection with this fact.

The two marine policies were what are known as blanket policies. They were issued under an agreement with the plaintiffs by which all merchandise belonging to them should be insured from the moment that it became their property in Yucatan, until forty-eight hours after the discharge of the steamer in Boston. While the rate of premium was fixed, the exact amount of the insurance and of the premium could not be known until the receipt of the invoice, and this sometimes did not reach the plaintiffs until some days after the arrival in Boston of the steamer carrying the goods; and in the case before us, the invoice did not arrive until after the loss. The marine companies were notified before the loss of the intention of the

plaintiffs to insure this cargo, but the details could not be accurately determined until the arrival of the invoice. There can be no question that these companies could not have avoided their liability. *E. Carver Co.* v. *Manufacturers' Ins. Co.* 6 Gray, 214.

The marine policies were general contracts for specific insurance on each cargo. It can make no difference whether a separate policy is issued for each risk, or one policy for all risks, each of which is separately identified by the invoice value, or by that value plus a certain percentage. In our opinion such insurance as was effected by the marine companies on each cargo was as much specific insurance as if a separate policy had been issued on that cargo.

The result is that the policy declared on did not attach to the cargo in question.                                    *Verdict set aside.*