THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY vs. THE FIREMEN'S MUTUAL INSURANCE COMPANY.

First Judicial District, Hartford, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 2d, 1929—decided January 6th, 1930.

*John T. Robinson* and *Ernest W. McCormick,* for the appellant (plaintiff).

*Allan E. Brosmith,* for the appellee (defendant).

HINMAN, J. The facts were agreed to and the case was submitted on a statement thereof. On December 7th, 1926, The Bradley & Hubbard Manufacturing Company carried insurance amounting to $900,000 against loss, by fire, lightning, sprinkler leakage, or windstorm, upon its manufacturing property, in Meriden, and contents consisting of fixed and movable machinery, apparatus, etc. The contents so insured included, as within the above general description, an electric generator known as Allis-Chalmers Engine Type, Stator S. W. 100112. Of the $900,000 insurance so carried, $90,000 was covered by a policy in the defendant company, which contained the following provision: "This policy does not cover any property or interest which is specifically insured by the owner . . . against similar liabilities in whole or in part."

There was also in force a policy executed by the

plaintiff company by which the insurer agreed to indemnify the assured "for loss resulting from damage to property of the assured and from the assured's liability for damage to the property of others, caused by the breakdown" of the Allis-Chalmers generator, above mentioned, except, among various "exclusions," it provided (3a) that "the Company shall not be liable for any loss or damage from breakdown caused by fire, nor for loss or damage by fire, outside the machine, resulting from a breakdown, nor for loss or damage resulting from the use of water or other means to extinguish fire." The policy provided (2 b) that "the word 'breakdown' shall mean only a sudden, substantial, and accidental burning out or breaking of a machine or any part thereof, while the machine is in use, or installed and connected ready for use, which immediately stops the functions of the machine and which necessitates repair or replacement before its functions can be restored." Liability for loss from any one accident was limited (13a) to not to exceed $5000.

The generator was run by a large double engine. In this generator, which was on the main crank shaft of the engine, the coils of the revolving part were connected by a mass of heavy insulated wires, or equalizers, at the end of the rotor, between it and the commutator. On December 7th, 1926, a short circuit of electricity occurred between the connections of some of the equalizers, due to deteriorated insulation, thus causing a sudden, substantial and accidental breaking down of the generator and the burning out of the combustible insulation of the equalizers, which formed a part of it, and the draft due to their revolving caused the destruction by fire of the insulation on all of these equalizers. The damage thereby caused to the generator amounted to $1750, of which ninety per

cent was due to fire, inside the machine, resulting from a breakdown. The plaintiff paid the assured the full amount of this damage, but took an assignment of all the assured's claims and rights against the defendant and other insurers, and brought this action to recover such part of the loss by fire ($1575) as is proportionate to the relation of the amount of defendant's policy—$90,000—to $905,000, the whole amount of insurance on the entire property, including the plaintiff's policy of $5000. The defendant claimed that the damage involved was "specifically insured" within the provision of its policy above quoted, and therefore not covered by it. The trial court so held and rendered judgment accordingly, and the correctness of this conclusion is the only question raised by this appeal.

There appears to be no dispute, nor room for any, as to the meaning and effect of the plaintiff's policy, so far as concerns the present case. It insured against loss or damage by fire *within the generator,* resulting from a breakdown of the machine, but not by fire *outside* the machine, whether resulting from breakdown or any other cause. The plaintiff concedes that the loss in question was within this provision of its policy. In addition to this narrowly limited insurance against loss by fire, the policy insured against damage, other than by fire, to property of the assured, and assured's liability for damage to the property of others, caused by breakdown of the generator. It is clear that the defendant's policy, by its general description of the property insured and other general provisions, covered loss or damage by fire within as well as outside the generator and whether caused by breakdown or otherwise, unless damage by fire, caused by breakdown, within the generator is excluded from coverage because specifically insured by the plaintiff's policy.

The ordinary and generally understood meaning of specific is "precisely formulated or restricted; . . . definite, or making definite; explicit; of an exact or particular nature." Webster's New International Dictionary. "Tending to specify, or make particular; definite; limited; precise." *Peters* v. *Banta,* 120 Ind. 416, 424, 23 N. E. 84, 85; 7 Words & Phrases (1st Series) p. 6599. Whatever the scope of the plaintiff's policy as a whole, the effect of the clause relating to damage by fire was to restrict its coverage as regards that particular risk to damage to the machine described in it and to that alone. This provision of the policy afforded insurance of a specified, particular, definite and restricted kind upon a single article of the insured's property. The liability so insured against is similar, to that extent, to that contemplated by the comprehensive coverage in the defendant's policy of the buildings of The Bradley & Hubbard Manufacturing Company and all the contents thereof. Liability under this provision of the plaintiff's policy for the particular loss here involved would be within the accepted definitions of the word "specific."

The plaintiff contends that since its policy does not specify the definite amount to which protection is afforded as to each of the several subjects of liability covered, including, separately, the extent of liability for damage by fire within the generator, the policy must be treated as compound or general, and cannot be regarded as special or affording specific insurance. In cases involving the apportionment of losses as between insurers, under policies containing no such special exclusion provision as is here involved, policies in which the total amount thereby insured against loss by fire was distributed among the several items of property insured, a specified amount to each item, have been held to be specific. Such policies were so

regarded and treated, incidentally to such an apportionment, in *Schmaelzle* v. *London & Lancashire Fire Ins. Co.*, 75 Conn. 397, 399, 53 Atl. 863. See also *Chandler* v. *Insurance Company of North America*, 70 Vt. 562, 41 Atl. 502; *Grollimund* v. *Germania Fire Ins. Co.*, 82 N. J. L. 618, 83 Atl. 1108, 54 L. R. A. (N. S.) 509, and cases collected in note; 2 Cooley's Briefs on Insurance (2d Ed.) p. 1244.

We find no warrant, in reason or authority, however, for arbitrarily limiting the scope of specific insurance to those instances only in which the amount of the total insurance is so allotted to the several items insured. A policy which singles out for particular insurance a certain article, or property of a restricted class, falling within the general description contained in a blanket policy covering all of the property of the insured as to the same risk, or a policy which, although its coverage taken as a whole is general in its terms, by certain provisions selects and affords discriminating protection to a certain article or specified items of property regarding a particular risk (as against loss by fire) against which the blanket policy protects all of the property of the insured, is to be regarded as specifically insuring the article or property so designated and specially protected.

As to the designation required to constitute insurance specific in that respect a few illustrative cases will suffice. In *United Underwriters Ins. Co.* v. *Powell*, 94 Ga. 359, 21 S. E. 565, insurance on cotton in a specified warehouse was held specific as against policies covering cotton in all the stores, warehouses, etc., of the insured or while in transit on the streets. In *Firemen's Fund Ins. Co.* v. *Western Refrigerating Co.*, 162 Ill. 322, 44 N. E. 746, it was held that insurance on "poultry and packages for same" contained in a designated warehouse, was specific and excluded from

the coverage of an open policy on merchandise, etc., "not specifically insured," contained in the warehouse. "To be specifically insured it was only necessary that it should be distinguished from the other kinds of merchandise" contained in the warehouse. See also *Fairchild* v. *Liverpool & London & Globe Ins. Co.*, 51 N. Y. 65, 68; *Kimball Bros. Co.* v. *Palatine Ins. Co., Ltd.*, 197 Iowa, 598, 195 N. W. 987; *Hough, Clendening & Co.* v. *Peoples Fire Ins. Co.*, 36 Md. 398, 429; *Klotz Tailoring Co.* v. *Eastern Fire Ins. Co.*, 102 N. Y. Supp. 82; *Royal Ins. Co.* v. *Roedel*, 78 Pa. St. 19; *Merrick* v. *Germania Fire Ins. Co.*, 54 Pa. St. 277; *Bloomfield* v. *London Mutual Fire Ins. Co.*, 29 Quebec, 143.

While in cases involving insurance of buildings or their contents, or specified goods, the amount of insurance attaching to separate buildings, or to building and contents separately, is usually specified, and the same is often true as to each of several classes or kinds of goods covered by a policy—attentive search does not reveal any compelling or persuasive precedent indicating that such a division and specification is an indispensable attribute of specific insurance. Cases directly bearing upon this point are not numerous. In *Peabody* v. *Liverpool & London & Globe Ins. Co.*, 171 Mass. 114, 50 N. E. 526, the exclusion clause in the general policy there sued upon, insuring property of the plaintiffs in Boston, against loss by fire, provided that "goods on which the insured have specific insurance are not covered in whole or in part by this policy." The plaintiffs had other insurance by two marine policies which covered the goods at the time of the loss. "They were issued under an agreement with the plaintiffs by which all merchandise belonging to them should be insured from the moment that it became their property in Yucatan, until forty-eight

hours after the discharge of the steamer in Boston. While the rate of premium was fixed, the exact amount of the insurance and of the premium could not be known until the receipt of the invoice, and this sometimes did not reach the plaintiffs until some days after the arrival in Boston of the steamer carrying the goods; and in the case before us, the invoice did not arrive until after the loss. The marine companies were notified before the loss of the intention of the plaintiffs to insure this cargo, but the details could not be accurately determined until the arrival of the invoice. . . . The marine policies were general contracts for specific insurance on each cargo. It can make no difference whether a separate policy is issued for each risk, or one policy for all risks, each of which is separately identified by the invoice value, or by that value plus a certain percentage. In our opinion such insurance as was effected by the marine companies on each cargo was as much specific insurance as if a separate policy had been issued on that cargo." (p. 115.) In *Cutting* v. *Atlas Mutual Ins. Co.,* 199 Mass. 380, 85 N. E. 174, it was contended that a policy insuring, for a specified amount, the insured's tanks and contents at Marcus Hook, Pennsylvania, was specific insurance within a provision of the policy sued upon (which was a blanket policy covering insured's tanks and contents in the State of Pennsylvania), that insurance under the latter should not attach until all specific insurance was exhausted. This point was not directly decided, since it was held that, if the insurance was specific, it had already been exhausted. "Specific insurance is to be deemed to have been exhausted when all that can be collected has been collected for a loss arising from any of the risks so insured against." (p. 383.) In *Merrick* v. *Germania Fire Ins. Co., supra,* a policy of $10,000 on machinery,

etc., in one of several buildings, the contents of all of which were insured by blanket policies in other companies, and another policy in the aggregate of $50,000 on machinery, made and intended for a certain steamer, in the various buildings of the assured, were treated as special policies. We perceive no controlling distinction between the plaintiff's policy and those under which the amount of insurance applicable to one or each of the items covered is ascertainable by recourse to invoices as in the *Peabody* case, by adjustment and exhaustion as was had as to the destroyed tanks in the *Cutting* case, by proof of liability, within the limit as to each head of stock fixed by the policy, as in *Wilson Co.* v. *Hartford Fire Ins. Co.,* 300 Mo. 1, 50, 254 S. W. 266, or by analogous methods of ascertainment.

*Kanawha Investment Co.* v. *Hartford Steam Boiler Inspection & Ins. Co.* (Oct. 1929, W. Va.) 149 S. E. 605, involved a policy of the defendant therein—the same company as is plaintiff in the present case—which appears to have been identical, in all relevant respects, with the plaintiff's policy here involved. It covered damage caused directly by the breakdown of certain electrical machinery in the plaintiff's building. The plaintiff also carried $350,000 of fire insurance on the building, in twelve different companies. A breakdown of one of the plaintiff's elevator motors occurred, causing a fire which did damage within the motor but did not extend outside it. In the suit on the policy the defendant claimed that the loss by fire should be shared, with it, proportionately, by all of the fire companies carrying insurance on the building. This contention was predicated upon an express provision in the defendant's policy for apportionment of losses with "other similar, valid and collectible insurance." Although this provision is not in issue in the

instant case and the exclusion provision in the present defendant's policy is so clearly distinguishable therefrom that the decision as to whether the general fire policies constituted "similar insurance" to that under the Steam Boiler Company's policy is not applicable here, it is significant that the court there held that "the fire policies were general; the policy in suit was specific. It covered particular items of property and for particular purposes."

If we determine the question before us by interpreting the determinative provisions of the two policies, having in view the commonly accepted and practical conception of the term "specific," and with due observance of the scope and significance of the clause in the defendant's policy that it does not cover "any property or interest which is specifically insured against similar liabilities in whole or in part," it is clear that the plaintiff's undertaking with regard to loss by fire within the generator constitutes specific insurance within the meaning of the clause just quoted, which is more comprehensive and favorable to the defendant's contention than to those discussed as having been involved elsewhere. This conclusion is not adversely affected by study and analysis of the cases bearing upon the subject. Upon this interpretation of the policy provisions involved, liability for the particular loss here in question is excluded from coverage by the defendant's policy.

There is no error.

In this opinion the other judges concurred.