## J. ALBERT HITZ ET AL. *v.* ALLIED AMERICAN MUTUAL LIFE INSURANCE COMPANY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 14-616-3637

Argued May 6—decided June 7, 1963

*H. David Leventhal,* of Hartford, for the appellants (plaintiffs).

*John Crosskey,* of Hartford, for the appellee (defendant).

JACOBS, J.  No evidence was taken in the trial court. The issues were submitted and decided upon an agreed statement of facts. On or about March

1, 1961, the named plaintiff was the owner of a boat named "Maybe" which was partially destroyed by fire while at the Seth Persson yacht yard at Old Saybrook, Connecticut. The damage to the watercraft amounted to $976.18. Prior to the date of the fire, the Aetna Casualty and Surety Company executed yacht policy No. YC 212732 covering the "Maybe," which is described therein as a "1949 Auxiliary Sloop." Under this policy, which was in full force and effect at the time of the fire, the named plaintiff agreed, for a total annual premium of $339.28, "to assume the first $450.00 of claims arising out of each separate accident under Section 'A' Hull Insurance." On April 26, 1960, the defendant, through its duly authorized agent, issued to the plaintiffs its homeowners' policy No. H 942452 for a term of three years. With an additional small premium, the total premium was $249.90, payable in yearly instalments of $83.30 each. The defendant's policy, commonly known today as a homeowners' policy, is relatively new in the insurance field. It was unknown before 1950. Prior thereto, insurance companies would issue separate insurance policies for each risk; for example, fire in dwellings and buildings, fire as to personal property, explosion, burglary and theft, residence boiler, vandalism and malicious mischief, lightning, additional living expense, and other perils. The homeowners' policy combines all of these in a comprehensive dwelling policy. The amount of each coverage is controlled by the amount of the insurance on the dwelling building. The underlying principle is to provide insurance coverage against many risks in a single policy.

Under the defendant's homeowners' policy No. H 942452, which is made a part of the record, § I, captioned "Coverages and Limit of Liability," contains four definitions of "coverages": dwelling, ap-

purtenant private structures, unscheduled personal property, and additional living expense. Section II, the comprehensive personal liability section, contains its own insuring agreements. The personal property coverage is subdivided as between property on the premises and property away from the premises and reads as follows:

"COVERAGE C — UNSCHEDULED
.PERSONAL PROPERTY

"1. *On premises:* This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by an insured, while on the premises, or at the option of the named insured, owned by others while on the portion of the premises occupied exclusively by the insured.

"This coverage does not include: animals, birds, automobiles, vehicles licensed for road use and aircraft; the property of roomers or boarders not related to the insured; articles carried or held as samples or for sale or for delivery after sale or for rental to others; and property which is separately described and specifically insured in whole or in part by this or any other insurance.

"2. *Away from premises:* This policy also covers unscheduled personal property as described and limited, while elsewhere than on the premises, anywhere in the world, owned, worn or used by an insured, or at the option of the named insured, owned by a guest while in a temporary residence of, and occupied by an insured or owned by a residence employee while actually engaged in the service of an insured and while such property is in the physical custody of such residence employee or in a

residence temporarily occupied by an insured. Property pertaining to a business is not covered.

"The limit of this company's liability for such property while away from the premises shall be an additional amount of insurance equal to 10% of the amount specified in Coverage C, but in no event less than $1,000.00."

The sole question to be determined in this case is whether the damage involved was, within the provisions of the defendant's policy quoted above, "separately described and specifically insured" and was therefore not covered by the defendant's policy.

This question depends upon the construction of the policy, and in its solution we must seek the intention of the parties, making use of the rules and canons of construction and interpretation which have been recognized by our courts as useful and helpful in such cases. See *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494, and cases cited. If the language of the policy is free from ambiguity, the intention of the parties must be sought therein. If the language is ambiguous, then the surrounding circumstances, the situation of the parties, and the objects intended to be accomplished may all be considered, and the language read in the light which they reflect.

"Where an insurance policy contains an express provision against liability if the insured carries other more specific insurance, or limiting liability to the excess over such insurance, this provision will be given effect, and the insurer will not be liable, either for the whole or for a ratable proportion of the loss, if other more specific insurance is carried." Note, 150 A.L.R. 636, 639, and cases cited. "Sometimes policies contain an express provision against

liability where there is other more specific insurance. Such a provision absolves the insurer from liability if other more specific insurance is taken out." 29A Am. Jur. 794, Insurance, § 1715. Thus, in *Hartford Steam Boiler Inspection & Ins. Co.* v. *Firemen's Mutual Ins. Co.*, 110 Conn. 332, the defendant's fire insurance policy covered manufacturing property and its contents and contained the following provision: "This policy does not cover any property or interest which is specifically insured by the owner . . . against similar liabilities in whole or in part." The defendant claimed that the damage involved was "specifically insured," and its contention was sustained on appeal. See 2 Cooley, Insurance (2d Ed.) p. 1244. We hold that the clear intent of the "escape clause" in the defendant's homeowners' policy was to throw the loss upon the specific insurance. "It was incumbent upon the [named] plaintiff to bring himself within the express terms of the policy. . . . He failed to do so. No conclusion other than that reached by the trial court was warranted." *Downs* v. *National Casualty Co.,* supra, 496.

There is no error.

In this opinion KOSICKI and PRUYN, Js., concurred.