SANFORD A. HOOPER *vs.* JAMES D. WEBB and others.

## April 4, 1881.

**Contract—Specifications—Evidence.**—A contract for building a bridge referred to specifications to be attached to and become a part of it. *Held,* that there being some evidence to identify as the specifications intended some which, after the execution of the contract, were attached to it by one of the parties, it was proper for the court to admit them in evidence.

**Same—Question of Construction erroneously submitted to Jury.**—Where, in a contract, the terms " first party " and " second party " are used to indicate the parties, it is for the court to determine to which party each of the terms refers. If, instead of determining it, the court submits it to the jury to decide, and they decide it as the court ought to have done, the error is immaterial.

**Same—Right of Contractor to abandon—Estimates—Waiver.**—Where a party executes a contract to do work according to a certain plan, he cannot abandon the contract merely because the plan is an improper one. Where an act of the legislature appointed five commissioners to make a contract for certain work, and only three sign the contract, the contractor cannot abandon the contract on the ground that the other commissioners claim the contract to be invalid because they did not sign it. A contract provided that on the first of each month a designated engineer should make an estimate of the work done, and that thereupon the amount of the estimate should be paid to the contractor, either in the bonds of a certain borough or in currency. A small amount of work was done in June. No estimate was made on the first of July. An estimate was made August 1st, and all but a small amount of it paid August 5th. No demand for an estimate or payment was made, and no complaint of the omission or delay made till the contractor alleged it as a reason for abandoning the contract. *Held,* the jury might find that the contractor had waived any right to complain of the omission or delay.

Plaintiff brought this action in the district court for Scott county, to recover possession of personal property consisting of lumber and stone, alleged to have been wrongfully taken from him by defendants.

The answer sets up a contract made by the plaintiff with the defendant commissioners, the material parts of which are given in the opinion, full performance on the part of defendants, abandonment by plaintiff, and consequent forfeiture,

under the terms of the contract, of all plaintiff's claim or title to the property described in the complaint.

On the trial before *Macdonald, J.,* and a jury, the defendants had a verdict. A motion for a new trial being refused, plaintiff appealed. Plaintiff also appeals from an order striking out an exception inserted in the settled case.

*L. M. Brown,* for appellant.

*R. A. Irwin,* for respondents.

GILFILLAN, C. J. Action to recover possession of certain personal property, consisting of lumber and stone prepared for the construction of a bridge over the Minnesota river at Belle Plaine.

It appears from the evidence that under two acts of the legislature, passed in 1879, providing for the construction of the bridge, the commissioners appointed for the purpose, of whom there were five, proceeded to make a contract with plaintiff to furnish the material for and construct the substructure of the bridge. The contract was in writing, and was signed by plaintiff and three of the commissioners—the other two refusing to sign it. It refers to designs, plans and specifications for the work, prepared by the engineer who was to have charge of the work, to which plans, etc., the contract, when executed, was, as stated in the contract, to be attached and form a part of it, and thereupon to be deposited in the custody of the clerk of the commission. It provided for paying plaintiff for constructing the substructure the sum of $8,875, "in manner following; that is to say, an estimate of the amount of work and the value thereof, proportionate to the whole, is to be made by said engineer on the first day of each month from and after the commencement of the work, and during the progress thereof, and until the completion thereof," and upon said estimate the said commissioners were to pay the amount thereof, either in the bonds of the borough of Belle Plaine, or in current money. Among the specifications which were attached to the contract when it was offered in evidence, was one which, in terms, provided

"that if the said first party shall, in the opinion of the second party, have failed or refused to comply with any of the stipulations contained in this contract to be performed by said first party, the second party shall have the right to cancel this contract and declare the same void; in which case the said first party shall have no claim whatever on said second party for damages or compensation for material or work; but said second party shall have a right to take possession of and hold said work and material absolutely, and shall be absolved as entirely and completely from this contract as if the same had never been made."

Under the contract, plaintiff commenced work on the bridge substructure sometime in June, 1879, and continued to about August 5th. No estimate was made by the engineer on July 1st, and, so far as the evidence shows, very little had been done up to that time. August 1st, an estimate, which included the property in controversy, was made, amounting to $1,507.43. August 5th, the commissioners delivered to plaintiff $1,500 in the bonds of the borough of Belle Plaine, and he thereupon served on them a notice of his intention not to do anything further towards fulfilling his contract, and also another notice specifying the grounds on which he refused to proceed. None of these grounds appear from the evidence to have been well founded, and some of them were, under the circumstances, frivolous; the whole being suggestive of a desire to escape from the obligations of his contract, rather than an honest intention to lay before the commissioners any complaint of their acts that he might have supposed he had. Afterwards, a corrected or final estimate was made of the work and material, amounting to $1,523.78. The commissioners paid him the balance of $23.78. The plaintiff continuing his refusal to go on with the work, the commissioners declared his contract forfeited, took possession of the material included in the final estimate, let the contract to finish the work to defendants Farrell & Smith, and turned the material over to them.

One of the defences relied on rested upon the specification which we have quoted, and a controverted question on the trial was, was that one of the specifications referred to in the contract as intended to be attached to and be a part of it? The case, on this point, is not entirely free from doubt, the evidence being conflicting; but the jury must be supposed to have found that it was one of those specifications, and their finding, as the evidence stands, must be held conclusive. At the time the contract, with the specifications attached, was offered in evidence, the evidence was to the effect that this specification was one of those referred to, and therefore the objection to the introduction of the specification, with the contract to which it was attached, was properly overruled. So that, if there were any exception to the ruling, it would not affect the case. But the court below struck from the statement of the case the exception inserted by appellant's attorney, and, on the proofs made for that purpose, it was justified in so doing.

What was meant in the specification by the terms "first party" and "second party" was a question of law for the court to decide. No serious question could be made, taking them with their context, that "first party" meant plaintiff, and "second party" the commissioners. And though the court ought not to have left it to the jury to decide, yet, as their decision of it was clearly such as the court ought to have made, no harm resulted from leaving it to them.

The questions put by plaintiff to the witness Webb as a cross-examination, and excluded on defendants' objection, were not properly cross-examination, but related to new matter. Evidence offered by plaintiff that the plan of the centre or turn-table pier was improper, and that two of the commissioners, who did not sign the contract, claimed that for that reason it was invalid, was clearly inadmissible. The execution of the contract by three of the five commissioners was a valid execution on the part of the commissioners; and the claim is absurd that he could abandon the contract because

the two not signing insisted that to render it valid required the signatures of all. It was plaintiff's business to ascertain before executing the contract that it could be fulfilled accordding to the plans.

Of the exceptions taken to the charge of the court, the only part intelligible is to the propositions that there was evidence from which the jury might find that plaintiff had waived any default of the commissioners in regard to estimates and payments, and also from which they might find that the payment of $23.78 was in full, instead of only on account. It seems to have been claimed at the trial that the evidence showed that the commissioners were in default in not causing an estimate to be made of the small amount which had been done prior to July 1st, and in the delay of five days in paying the estimate for July.

Under the contract plaintiff had a right to insist on an estimate July 1st and another August 1st, and payment of each, either in bonds or currency, within a reasonable time thereafter. A refusal by the commissioners to comply with the contract on their part would have justified him in abandoning it. But he made no demand for an estimate on July 1st, and continued on with the work, saying nothing about the estimate. This was certainly evidence that he waived that estimate. He made no demand for an estimate on August 1st, nor for the payment of it. He made no complaint of any omission or any delay until he assumed to abandon the contract. The contract contemplated that after an estimate the commissioners should have time and opportunity to procure the issuance of bonds to pay it. They were entitled to a reasonable time to do this. There is no evidence, nor is it suggested, that the time taken from the 1st to the 5th was unreasonable. As to that estimate no default on their part appears. So far as there was any default to be waived, the court below was right in assuming there was evidence of a waiver. There was also evidence that the $23.78 was paid and received in full for all plaintiff had done and furnished

under the contract. The amount was offered to be paid him as the balance due him on the estimate, (the final estimate.) At first he refused to receive it, but afterwards expressed his willingness to do so, and it was thereupon paid to him, and he gave a receipt for it, not as a balance due, but "on account." A receipt is explainable by parol; and, notwithstanding the language of this, the jury might find, from what had preceded, that the money was paid in full.

There is no question of forfeiture in the case. The plaintiff furnished the material under his contract, was paid for it pursuant to his contract, and according to his contract, he having without just cause refused to proceed with it, the right to the material and to retain it vested in the commissioners.

Orders affirmed.