CARGILL *vs.* MILLERS' & MANUFACTURERS' MUTUAL INSURANCE COMPANY.

January 10, 1885.

Fire Insurance—Policy Construed—Property Insured.— A policy of insurance upon a grain "elevator building and additions" construed as covering a warehouse standing two and a half feet from the elevator proper, and attached to it by boards nailed to both buildings. The warehouse was used only for the storage of grain received into the elevator and conveyed by spouts to the warehouse. Grain was discharged from the warehouse through the elevator by a conveyor running under both buildings.

Same—Time of Payment—Proof of Loss.—The policy provided that "in case of loss, the assured shall forthwith notify the secretary in writing, and shall, as soon as may be, render to the company a particular statement in writing, signed and sworn to * * *" (proof of loss.) It prescribed that payment should be made within a time named, "subsequent to no--

tice, as aforesaid, of such loss." Policy construed as fixing time of payment with reference to the written *notice* of loss, and not with reference to the formal *proof of loss.*

Action upon a fire-insurance policy for $5,000, upon an "elevator building and additions," brought in the district court for Hennepin county, the damage from the fire to the property insured being alleged by plaintiff to amount to $7,195. The answer admits the issuance of the policy, pleads in defence the by-laws and regulations of defendant set out in the opinion, and denies that the loss to the property covered by the policy exceeded the sum of $4,545. From the evidence it appeared that the elevator proper was appraised at $4,445, and the warehouse referred to in the opinion at $2,749.

The action was tried by *Young,* J., without a jury, and judgment ordered for plaintiff for the full amount claimed. Defendant appeals from an order refusing a new trial.

*Cross, Hicks & Carleton,* for appellant.

*J. S. Root,* for respondent.

DICKINSON, J. Action upon a policy of fire insurance, the property insured being described in the policy as a "steam-power elevator building, and additions, with porches and platforms attached, including engine and boiler house.   *   *   *"   One of the questions in the case is whether the policy covered a warehouse standing near the elevator. The warehouse stood within two and a half feet of the elevator building, and was of about the same size as the elevator. The two buildings were fastened together by strips of board—about 20 in number—nailed upon each building. The warehouse was used exclusively for storing grain, which was first received into the elevator, and then spouted into the warehouse through two spouts, which extended from one building to the other. The grain was taken from the warehouse by a conveyor running under the warehouse and elevator. No grain was received into or discharged from the warehouse except through the elevator, the warehouse being thus used as a part of the elevator, for the storing of grain received into the elevator. The further fact is shown that the only means of entrance to the warehouse was by a window which was reached by a ladder, or by cleats nailed on the side of the building. The court below, trying the case

without a jury, considered that the warehouse was covered by the policy. We concur in this construction of the policy. The warehouse served the same purpose, and no other, as a bin in the elevator building. It was used as a part of the elevator, and was so connected with it, that, in view especially of this use, it must be considered as having been intended by the parties to be included in the designation, "elevator building and additions."

By the terms of the policy it was provided that, "in case of loss, the assured shall forthwith notify the secretary in writing, and shall, as soon as may be, render to the company a particular statement in writing, signed and sworn to by him, of the property lost or damaged, the value of the same," etc. "All losses shall be paid within sixty days after the first meeting of the board of directors or executive committee held subsequent to notice as aforesaid of such loss. * * *" The policy also contained this stipulation: "It shall be optional with the company to repair, rebuild, replace, or restore the property lost or damaged within a reasonable time, giving notice of their intention to do so within thirty days after the receipt of the proofs herein required." The loss occurred on the 20th day of September. On the same day, notice of the loss was communicated to the defendant by telegraph, and two days after by letter. Proofs of the loss were not made until December 22d, and this action was commenced December 24th. The executive committee met twice each month. It is contended that the action was prematurely brought; that there was no right of action until 60 days after the meeting of the directors or executive committee, subsequent to the furnishing of the proof of loss. No suggestion is made that the proof of loss was too tardily made.

The notice of the loss, which the insured is required by the policy to give in writing "forthwith" upon the occurrence of a loss, and the statement or proof of loss to be rendered "as soon as may be," are distinct. *Chandler* v. *St. Paul F. & M. Ins. Co.*, 21 Minn. 85, 87; *Killips* v. *Putnam F. Ins. Co.*, 28 Wis. 472. The one is essentially a notice, and is so designated in the requirement to "notify" the secretary; the other—which in the policy is called a "statement"—is not of the character of a mere notice. In the law of insurance it has come to be known as the "proof of loss," or "preliminary proof," and

is elsewhere in the policy referred to as the "proofs herein required." The most natural, if not the necessary, construction of the instrument, is to read the words, "*notice as aforesaid of such loss,*" as referring to the notice of loss, and not to the proof of loss. This conclusion is further supported by the principle which requires us to construe liberally in favor of the assured those provisions of the contract made for the benefit of the insurer and expressed in a form deliberately selected by it. *Chandler* v. *St. Paul F. & M. Ins. Co.*, 21 Minn. 85; *Loy* v. *Home Ins. Co.*, 24 Minn. 315.

The terms of the policy with respect to rebuilding are not necessarily inconsistent with this construction. The assured is required, "as soon as may be," to present his proof of loss. If this should be done within 30 days after the loss occurred, there would remain thereafter at least the full period limited—30 days—before the obligation to make payment would mature, within which time the insurer might exercise its election to rebuild. A delay for a period much exceeding 30 days, in making the proof of loss, might leave less than 30 days after that event within which the election to rebuild should be exercised, in order to avoid an action to recover payment. But the embarrassments of such a case are not such as to warrant the conclusion that the computation of time with respect to payment was intended to be made with reference to the time of the furnishing of the proofs of loss, in the face of the explicit provision which makes the *notice* of loss to determine the time of payment.

Order affirmed.