Strafford,  
April 7, 1931.

STUDLEY BOX & LUMBER CO. *v.* NATIONAL FIRE INSURANCE CO.  
SAME *v.* AMERICAN INSURANCE CO.  
SAME *v.* ROYAL INSURANCE CO.

*Cooper & Hall* (*Mr. Hall* orally), for the plaintiff.

*Warner, Stackpole, Bradlee & Cabot* (of Massachusetts), *Conrad E. Snow* and *George B. Rowell* (of Massachusetts), (*Mr. Rowell* orally), for the defendants.

ALLEN, J. The cases present two points of construction of the policies. One relates to the coverage of the insurance and one to its amount.

As to the coverage, the insurance differs from ordinary fire insurance. Insurance against loss by fire of some part of the value of the property is not given. The policies insure against consequential loss to the insured's business carried on in the property destroyed or damaged by the fire. The insurance is indifferently designated as of business indemnity or of use and occupancy. But only actual loss is contemplated.

In ordinary fire insurance policies the different items of the property insured are separately valued although they may form a collective group of structures and contents devoted to a single enterprise. In business indemnity insurance its object may not be accomplished by such an apportionment of the entire insurance. The business as a whole is protected. It is plainly impossible to assign to each unit of the group which makes up the plant the amount of business loss which its destruction or damage would occasion. The business being conducted as a whole, a fire loss on any of the units of the plant affects the business in its entirety and not merely the particular part of it carried on in such unit. The units are mutually dependent and if one fails, the others ordinarily suffer. If it is conceivable that a business loss resulting from fire damage to a particular unit might be definitely ascribed to it in amount and without effect on the part of the business conducted in the rest of the plant, the policy would be expected to provide for it. Without evidence to the contrary, the object of the policies is clear to insure against loss from the interruption of the business as a whole, whatever part of it may be conducted in or with the property which suffers from the fire. While loss of a certain kind by fire is insured against, the nature of the loss is such that it is not important in this respect what part of the property sustains loss.

The description of the property in the policies here considered is of the principal structures in which the business was done and their contents. But with the object of the insurance in mind, the description is not exclusive of other structures, with their contents, used in and appurtenant to the business. The office and other buildings east of the roadway and north of the brook, understood to be conceded as a part of the plant within the coverage, are no more a part of it than the building burned. The separation by the brook did not separate it from its standing as a related parcel which was drawn by the business into the integrated plant.

The description, if it sacrifices accuracy to brevity, yet expresses what the parties had in mind. In the light of the situation reference to the structures of major importance is inclusive of those of a minor or incidental character. It is not a violence to language and does not reform the policies thus to construe them. The rules that a deed bounding land on a highway presumptively conveys title to the center of the highway and that a conveyance of property includes all of its appurtenances without reference to them, may be suggested as parallel instances of a construction giving effect to the intention of the parties by adding minor and incidental things. The intent is

sufficiently expressed. The defect of incompleteness does not establish a deficiency of the instrument in such expression, when the context viewed with consideration of the competent parol evidence supplies the omission. Inadequacy and inaccuracy are not the same when the instrument and other available evidence show the inaccuracy.

Taking the insurers at their own word in the note saying that the direction that the description should clearly indicate the buildings was no part of the policy and might be deleted, the fair meaning is that an inaccurate description might be translated into an accurate one if it was shown what property the description was intended to refer to. By the implication of their own statement a clear description was not insisted upon, and their claim now made of a right to a construction of literal exactness is inconsistent with their own rule of construction. They may not fairly find fault with that which they have permitted. While the note was not in fact deleted, it was not a term of the policies and it naturally led the insured to understand that the direction might be disregarded without the formality of actual deletion. And in the reference in another note to the effect of operating "the plant" daily is an implication that the language of partial description was the insurer's way of describing the whole.

The clause reciting a special premium rate for the insurance because of the installation of a sprinkler system and requiring its maintenance, is inconclusive in showing the coverage. It may be assumed that the buildings mentioned in the policies contained such installation while the barn did not. But so far as appears the rate was not apportioned and it depended upon the absence of the system in the barn as a factor in its computation as well as on the supply of the system in the buildings where it was installed. All that can be said is that the equipment in some of the buildings gave a lower rate for the entire insurance than would have been the case without it.

Regarding the amount of recovery, the loss secured by the policies was spread over a number of days. Its daily amount did not exceed the *per diem* allowance the policies gave. But the fire caused only a partial suspension of business, and it is argued that because the policies give only an allowance of loss incurred under such a suspension equal to the proportion of the loss to the loss under a total suspension, the plaintiff may recover only that proportion and must show what the total suspension loss would have been to entitle it to recover anything.

If it be conceded that the policies are capable of such a construc-

tion, the insured probably had no such understanding. What the complicated language of the partial suspension clause, coming from the insurers, probably meant to a reasonable man in the insured's place, determines its effect. *Watson* v. *Insurance Co.*, 83 N. H. 200, 202.

The ordinary man, having such a policy and knowing that he was insured for loss in partial as well as total suspension, would expect the loss to be a matter of practical and reasonable computation. If on reading the partial suspension clause he found its meaning so obscure as to make it doubtful how the loss was to be ascertained, he would give it study to reach a conclusion. In this he would have the right to understand that the clause was not meant to operate so greatly to his disadvantage as to tend to defeat the protection for which he negotiated unless it could fairly be given no other meaning.

Realizing that one element insured was loss of profits, he would appreciate that in a partial suspension he would be entitled only to the proportion such loss bore to their loss under a total suspension. But as to expenses incurred incident to the fire and to reduce the loss, he would expect full indemnity up to the general *per diem* limit, whether the suspension were total or partial. Such a conclusion would be reasonable because of the provision at the end of the clause for considerations of past and probable future experience. This provision at least is clear to show that loss of profits was contemplated as an item of treatment by the clause. And it is fairly clear that it is the only item. To apportion the expenses when the suspension is partial would be a severe and unnatural reduction of the general insurance contemplated. And no reasonable method of computing the proportion is perceived. The estimate would seem to be wholly arbitrary. When the suspension is partial, there is no way of telling what the expenses would be if it were total. Their amount would be conjectural. Nor may a partial suspension be fairly estimated as a definite part of a total suspension. The terms involved of the number of help affected, the part of the plant shut down, and the reduction of volume of business, are so interwoven that any formula would have no trustworthy value even of approximate certainty. And such expenses would bear no relation to the experience of the business as a profitable or losing venture.

This view appears to accord with the decision in *Fireman's Ins. Co.* v. *Lasker*, 18 Fed. Rep. (2d) 375. As to loss of profits it allowed only such part as was the proportion of them to their amount under a total suspension. But as to expenses it allowed their full amount.

There were a number of policies and recovery upon the one in suit was given for its part of the entire insurance.

To construe the clause as the defendants claim would result in the unnatural situation of imposing a possible duty on the insured to defeat himself. The policies require the insured to use due diligence to reduce the loss. If the fire caused a total suspension, the insured would recover for all the expense of the reduction up to the *per diem* limit. But if by due diligence he brought about a change from total to partial suspension, he would suffer in so doing if the expense of the partial suspension were to be reduced by applying the proportion as claimed. With the expense in total suspension allowed in full and the expense in partial suspension given allowance only in part, the incongruity of a requirement for the insured to exercise diligence tending to deprive him of, instead of giving him, his insurance, is apparent.

Except with reference to the loss of profits the clause is insensible and meaningless.

The plaintiff may recover according to its claim.

*Exception sustained.*

SNOW, J., did not sit: the others concurred.