ROBERT R. ELLIOTT v. RETAIL HARDWARE MUTUAL FIRE
INSURANCE COMPANY OF MINNESOTA.[1]

June 19, 1931.

No. 28,565.

*Harry A. Hageman,* for appellant.
*Nathan H. Chase,* for respondent.

[1]Reported in 237 N. W. 421.

OLSEN, J.

Plaintiff appeals from the judgment.

The action is one to recover under three fire insurance policies for loss by fire of part of a stock of merchandise. The case was tried to the court without a jury. It was agreed that the amount of loss and damage caused by the fire to the goods belonging to plaintiff was $3,904.76. The defendant admitted that it was liable for $377.84 of this loss. As to the balance of the loss, amounting to $3,526.92, defendant alleged that it was not covered by the policies. The court sustained this defense and awarded recovery of $377.84 only. The question presented is whether the insurance policies covered the goods of the value of $3,526.92, for which recovery was denied.

For 30 years last past the plaintiff has owned and conducted a large retail hardware business in Minneapolis. During all that time he owned and occupied in his business a three- and four-story brick and stone building and basement thereunder, generally known as No. 312 Hennepin avenue. Twenty years ago, apparently for the purpose of providing more room for his stock and business, he leased a part of the basement under an adjoining building, referred to as No. 310 Hennepin avenue. The two buildings were separated by a party wall. To make the leased basement space accessible and suitable for use in his business, plaintiff partitioned off the leased basement space from the remainder of the basement under the adjoining building, connected the leased room with the basement room under his own building by two large archways through the partition wall, and fitted it up with shelves or pigeon holes for stock the same as the basement under his own building. The elevator in plaintiff's building comes down at one of these archways, so that persons using the elevator can step in or out thereof from or into either room. Plaintiff has continued to lease and occupy this connected basement room with his stock of stoves, stove parts, repairs, and goods. There is no difference in the stock carried in the connected basement room and in the basement under plaintiff's own building. The entire basement space, that leased and that

owned, is used as one retail salesroom for the sale of the goods therein kept, and customers go to and from one room to the other through the archways to examine and purchase goods. The $3,526.92 worth of goods, for which recovery was denied, were at the time of the fire contained in the connected basement room so leased and occupied by plaintiff, located under the adjoining building. The $377.84 worth of goods, for which recovery was allowed, were in the basement room under the building owned by plaintiff.

Defendant first insured plaintiff's stock of goods in 1918. This insurance was not renewed in 1919. In 1920 it again insured plaintiff's stock of goods, and policies were thereafter renewed and carried, with some changes in amounts, up to and covering the time of the fire, which happened on January 23, 1925. At the time of the fire three policies of $10,000 each upon plaintiff's stock of merchandise were in force. One of these policies included an additional insurance of $5,000 on furniture and machinery, not here involved. The coverage clause of each policy then in force, as well as in the prior policies, reads:

"$10,000 on his stock of merchandise of every description * * * consisting in part of stoves, ranges, heaters, kitchen utensils, refrigerators, stove castings and stove parts of every kind, cement polish, paints, fire brick, sheet iron, tin, copper, and zinc, raw, wrought and in process of manufacture; all while contained in the four and three story and basement, brick and stone, composition roof building, situated and being No. 312 Hennepin Avenue, City of Minneapolis."

The policies contain a further provision as follows:

"Permission granted for mechanics to be employed for more than fifteen (15) days in making alterations, improvements and repairs to any building herein described, and in constructing additions or sheds which attach to and communicate with such building, * * * and the insurance, if any hereunder, on contents of any building herein described is hereby made to cover in such attached and communicating additions and sheds to said building."

It is further provided:

"Permission granted for such use of the premises as is usual and incidental in the business, as conducted therein, of Retail Hardware Stores."

There are no questions of fraud, increase of risk, or difference in premium rates involved. There is no material dispute as to the facts above outlined. In that situation there should be no question or reasonable doubt but that the policies covered the stock in the connected and communicating basement room. It is quite clear that the intention was to insure plaintiff's entire stock of goods at this location, whether contained strictly in the building known as No. 312 Hennepin avenue or in additions connected and communicating therewith. Had plaintiff leased adjoining ground and built a basement or addition thereon connected and communicating with his own building, after the policies were written, the express policy provision would have covered goods placed in such basement or addition. No fine distinction can be made between building an addition and leasing and fitting up a basement room in a basement already existing. By what was here done, the basement room under the adjoining building became in effect a part of the premises known and used as No. 312 Hennepin avenue. The goods therein were part of the goods kept by plaintiff at No. 312 Hennepin avenue and were so used and treated. For more than five years defendant had carried a large amount of insurance on plaintiff's stock of goods of every kind at this location.

Plaintiff sought to prove that defendant had actual knowledge of the situation and knew that part of the goods were in this connected basement room at the time the policies were written. The court throughout the trial took the position that the language of the policies precluded any showing of intention by the parties to cover goods in the adjoining and connected basement room. Some evidence tending to show knowledge of the situation on the part of the defendant was received and some excluded. The court declined to make any finding on the question. In its memorandum to

the order denying plaintiff's motion for amended findings and denying his motion for a new trial, the court states that the findings made are in accord with the provisions made between the parties themselves (the policies) and as "denominated in the bond." In so strictly construing these policies the court was in error. The well known rule is that insurance policies are to be liberally construed as to the insured. These policies are not so definite and specific as to coverages that they exclude evidence of the situation and circumstances existing at the time. The insurance is upon plaintiff's stock of goods. The clause "while contained in the four and three story and basement * * * building situated and being No. 312 Hennepin Avenue" is not so restricted as to preclude inquiry as to what constituted the premises therein mentioned. In Everett v. Continental Ins. Co. 21 Minn. 76; Holbrook v. St. Paul F. & M. Ins. Co. 25 Minn. 229; and DeGraff v. Queen Ins. Co. 38 Minn. 501, 38 N. W. 696, 8 A. S. R. 685, it was held that a provision in the policy that the property was all contained in a described building was mere matter of description operating to identify the property, and that when so identified the property was covered, although not in the building at the time of loss.

In Cargill v. Millers & M. Mut. Ins. Co. 33 Minn. 90, 22 N. W. 6, a warehouse standing two and a half feet from an elevator but connected with it by some boards nailed across the intervening space was held to be an "addition" to the elevator and covered by a policy insuring the elevator and additions.

In Pettit v. State Ins. Co. 41 Minn. 299, 303, 43 N. W. 378, 379, the policy covered grain "while contained in the frame, iron-clad, metal-roof building, * * * known as the St. Anthony Elevator." This was held to cover grain in an annex building located 300 feet from the main elevator building but connected with the main elevator by two covered galleries or passageways. The court said that the interpretation most favorable to the assured is to be adopted. The court further held that in the situation there shown the insurance agent was presumed to be familiar with the buildings,

and it was for him, if he so desired, to limit the insurance as he might deem necessary.

In our present case the plaintiff wanted insurance on his stock of merchandise which he kept and used at No. 312 Hennepin avenue. The defendant could refuse to insure or could limit the insurance if it so desired. If it failed to inquire or inspect as to the situation and exact space occupied by the merchandise, it should not now be heard to complain. No doubt it would just as readily have granted the insurance on goods in one part of the basement as in the other. It suffered no harm.

In Boak Fish Co. v. Manchester F. Assur. Co. 84 Minn. 419, 420, 87 N. W. 932, the policy covered fish "while contained in the four-story brick, composition-roof building, known as 'Thurston's Cold Storage Warehouse.'" Nothing was said in the policy about additions or an annex. The property destroyed was located in a one-story annex. The court held that the property in the annex was covered by the policy, and that the court properly received evidence to show that this annex was an essential part of the warehouse and included with it. In like manner the basement room here in question was an essential part of the hardware store at No. 312 Hennepin avenue and included in it.

26 C. J. 94-95, states the rule that a policy on property described as in a certain building may cover property in adjoining or connected buildings and places, especially where it is property in a manufacturing plant or general place of business, unless it is apparent from the terms of the policy and the surrounding circumstances that property so situated was not intended to be covered. Cases are cited in the notes. There is nothing in the evidence here to show an intention not to cover plaintiff's entire stock of goods. If we assume that defendant did not know that part of the goods was kept in the adjoining and connected basement room, that fact does not show any intention not to insure the entire stock. The evidence as a whole clearly leads to the conclusion that the intention was to cover the entire stock of merchandise kept and used by plaintiff in his business at this place on Hennepin avenue.

Judgment reversed and case remanded to the district court with directions to amend its findings of fact and conclusions of law in accordance with this opinion, unless upon application of defendant the court shall for cause shown grant a new trial.

Reversed.