CEMENT, SAND AND GRAVEL COMPANY v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, AND OTHERS.[1]

December 26, 1947.

No. 34,492.

[1]Reported in 30 N. W. (2d) 341.

*Fryberger, Fulton & Boyle,* for appellants.

*Holmes, Mayall, Reavill & Neimeyer,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying the motion of all the defendants except the Concordia Fire Insurance Company for judgment *non obstante* or a new trial.

The original action was brought against 11 defendants on 12 fire insurance policies to recover for the loss of personal property destroyed in a fire on February 15, 1946. The Concordia company, which had issued two policies, did not appeal, and the Alliance Insurance Company, which had issued one policy, dismissed its ap-

peal. Therefore this appeal is limited to nine policies and nine defendants. The only question in issue is whether the personal property destroyed was covered by the policies.

Each of the policies in describing the property covered uses substantially the language contained in the policy of the Norwich Union Fire Insurance Society Ltd., which reads as follows:

"On main building including machinery and equipment in connection therewith comprising structure known as Gravel Screenings, Washing and Storage Plant.

\* \* \* \* \*

"The terms 'Building' or 'Structure' and 'Machinery and Equipment' as used in this form are for the purpose of this insurance hereby defined and insurance thereunder shall apply and cover as follows:

" 'Building or Structure' to building or buildings with foundations, attached and communicating additions, sheds, platforms, *conveyors,* passageways and superstructures thereto or thereon attached *forming one complete structure,* also all permanent heating, \* \* \* and *all other exterior and interior permanent fixtures and equipment rightfully belonging to and forming part of the building.*

" 'Machinery and Equipment' to fixed and movable machinery and equipment of every kind and description with its spare and duplicate parts, attachments, connections and appurtenances, rails and all tools, utensils, implements, appliances and supplies *used or for use in the care, maintenance and operation of the assured's plant* \* \* \* while *contained in, on or attached to any of the buildings herein described or within one hundred (100) feet thereof and not otherwise specifically mentioned herein* forming part of a building.

"EXCLUSION CLAUSE: This policy does not cover automobiles or automobile trucks. \* \* \*" (Italics supplied.)

Each of the policies permits other insurance. Two of the policies, however, namely, those issued by defendants Hardware Mutual Insurance Company and American Home Fire Assurance Company, in

the "machinery and equipment" clause, limit the coverage to property within the 100-foot area and "not otherwise specifically insured." The policy of defendant Agricultural Insurance Company, as a matter of obvious typographical error, omits the words "one hundred (100) feet thereof" from the machinery and equipment clause.

Plaintiff's sand and gravel plant, consisting of several buildings and certain machinery and equipment, inclusive of the property covered by the foregoing policies, is located inside the Duluth city limits, but outside the built-up portion, on a tract of land containing gravel deposits. The main building described in the policies as "comprising structure known as Gravel Screenings, Washing and Storage Plant," is located on the northwest corner of the plant area and consists of two structures 113 feet apart connected by a conveyor belt enclosed in a wooden housing extending in an east-west direction. The structure at the east end of the main building contains storage bins for finished gravel. In order to take care of any overflow of finished gravel, chutes run down from the storage bins to the hopper of a stock-pile conveyor, which extends outward in a southwesterly direction. The stock-pile conveyor is not connected with the main building except by electric wires which supply the electric power for its operation, but it is to be noted that the chutes, which are attached to the main building, extend into the interior of the hopper, which is an integral part of the stock-pile conveyor.

The destroyed personal property for which recovery is sought under the policies consisted of electric motors, belts, power and hand tools, oils, lubricants, miscellaneous repair parts and supplies, one P. & H. Shovel with repair parts therefor, two complete truck motors, and certain other truck supplies and repair parts. All this property was kept in a building (hereinafter called the storehouse) located about 120 feet south of the main building proper. One corner of this storehouse, however (covering an area of approximately 110 square feet), was within 100 feet of the end of the stock-pile conveyor. The storehouse, which had been located on the same

spot for approximately four years, besides being used for storage purposes, also provided office and shop space and sleeping quarters for the watchman. Obviously, only a small portion of the destroyed property kept in the storehouse could have been stored in the small corner area which was within 100 feet of the stock-pile conveyor. Almost entirely within the 100-foot area, however, there was a warehouse in which certain motors were stored. Certain other buildings were wholly outside the area encompassed by a 100-foot radius, whether measured from the main building proper or the conveyor.

The question as to whether the property was covered by the respective policy contracts was submitted to the jury for determination. The jury brought in a verdict for plaintiff. Defendants urge a reversal of the trial court's order denying their motion for judgment *non obstante* or a new trial on the principal ground that the property destroyed was erroneously construed to be within 100 feet of the main building proper, and on the further ground that a construction of the policy terms was erroneously left to the jury.

 Aside from the standard provisions required by statute, it is elementary that the language of an insurance policy, being that of the insurer, selected by it and intended for its own benefit in limiting the scope of its principal obligation, must be clear and unambiguous, and any reasonable doubt as to its meaning must be resolved in favor of the insured.[2] This rule of liberal construction in favor of the insured is applicable to the provisions describing what property is insured against loss, and such descriptive provisions must be construed with reference to the nature of the property, the purpose for which it is ordinarily used, and the manner in which it is ordinarily kept.[3]

---

[2]De Graff v. Queen Ins. Co. 38 Minn. 501, 38 N. W. 696, 8 A. S. R. 685; Trost v. Delaware Farmers Mut. F. Ins. Co. 137 Minn. 208, 163 N. W. 290; Elliott v. Retail Hardware Mut. F. Ins. Co. 183 Minn. 556, 237 N. W. 421; Restatement, Contracts, § 236d; 3 Dunnell, Dig. & Supp. § 4659.

[3]Boright v. Springfield F. & M. Ins. Co. 34 Minn. 352, 25 N. W. 796; De Graff v. Queen Ins. Co. 38 Minn. 501, 38 N. W. 696; National F. Ins. Co. v. Itasca Lbr. Co. 148 Minn. 170, 181 N. W. 337; Elliott v. Retail Hardware

■ In determining the area of coverage under the clause "within one hundred (100) feet thereof," are the 100 feet to be measured from the main building proper or from the stock-pile conveyor as constituting part of such building? The intent of the contracting parties is to be ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole.

"* * * the day is past for adhering to technical or literal meanings of particular words in a deed or other contract against the plain intention of the parties as gathered from the entire instrument." Long v. Fewer, 53 Minn. 156, 159, 54 N. W. 1071.

We cannot here say that the coverage clause is free from ambiguity in the light of the policy as a whole. The very wording of the beginning paragraph shows that the parties intended to insure the main building, not as an isolated structure with no relation to its surroundings and appurtenances, but as a gravel screenings, washing and storage *plant*. In defining the words "building or structure," it is expressly provided that it shall include all *"attached and communicating additions,* sheds, * * * *conveyors,* * * * forming one complete structure, * * * *and all other exterior* and interior permanent *fixtures and equipment rightfully belonging to and forming part of the building."* (Italics supplied.) The definitive words quoted *specifically include attached and communicating conveyors* and all other exterior permanent fixtures and equipment rightfully belonging to and forming part of the building which is described as a gravel processing plant. Bearing in mind the nature of the property and its use, it would indeed be a narrow construction to hold that the stock-pile conveyor was not a part thereof. As an operative plant, the main building logically includes the conveyors as one of its essential functional parts. It could not operate in its

Mut. F. Ins. Co. 183 Minn. 556, 237 N. W. 421; 3 Dunnell, Dig. & Supp, § 4761.

customary manner without some device for removing the overflow of gravel. It is true that the conveyor has no actual physical attachment with the building other than the power transmission wires. It is, however, fed by communicating chutes which project from the building into the very opening of the conveyor's hopper. In a functional as well as in a practical sense, the stock-pile conveyor is an integral part of the main building as a gravel processing plant, and therefore the 100-foot clause is applicable to an area within a 100-foot radius of the conveyor. Significant, also, is the fact that the language used in describing the attached and communicating conveyors would have no purpose unless it is applied to the stock-pile conveyor. It is unreasonable to assume, in the absence of a compelling necessity, that language employed by the parties is not used to express some intelligible idea or that they used language having no reference or application to the subject matter of the contract. Marsh v. Concord Mut. F. Ins. Co. 71 N. H. 253, 51 A. 898.

From the determination that the 100-foot radius of the coverage area is to be measured from the stock-pile conveyor, we proceed to a consideration of whether the property destroyed was covered by the policies while in the storehouse situated only in part within the 100-foot area. The "machinery and equipment" clause is applicable to "machinery and equipment of every kind and description with its spare and duplicate parts, * * * and all tools, * * * and supplies *used or for use in the care, maintenance and operation*" of the plant "while contained in, on or attached to any of the buildings herein described or within one hundred (100) feet thereof * * *." (Italics supplied.) The property was not and could not be kept in the main building. What significance can we give to the words "while * * * within one hundred (100) feet thereof" in the light of the policy as a whole? It is imperative that we consider the nature of the property, its ordinary use, and the manner in which it was ordinarily kept. Obviously, motors, tools, belts, spare machinery parts, and other metal equipment must be kept under shelter to avoid damage from the elements. Protection from

rain, snow, and sun is vital. The property destroyed was needed on the premises where it would be available for use at all times. Where could it be stored? There was no room for storage in the main building. The small warehouse in which a few motors had been placed was wholly inadequate for the storage of so large an amount of equipment and supplies. For approximately four years, the property had been regularly and ordinarily kept in the storehouse. Its ordinary use was for the care, maintenance, and operation of the plant. All these facts were known or should have been known to the insurers or their agents. Are we justified in construing the policy terms with such precision that the obvious purpose for which the insurance was obtained is defeated? We think not. Insurance companies survey the property which they insure, and they should not later be heard to say that they were not familiar with its nature, its ordinary use, and the manner in which it was kept. Northwestern Fuel Co. v. Boston Ins. Co. 131 Minn. 19, 154 N. W. 515; Elliott v. Retail Hardware Mut. F. Ins. Co. 183 Minn. 556, 237 N. W. 421. In behalf of defendants, an insurance rating bureau was required to and did survey the premises here involved, and its knowledge of these significant factors may be presumed. Pettit v. State Ins. Co. 41 Minn. 299, 43 N. W. 378. See, M. S. A. 71.04. When the insurance was placed, the location of the storehouse building was easily ascertainable, and it would have been a simple matter for the insurers to select language which would have excluded its contents entirely instead of leaving it partially within and partially without an arbitrary line of demarcation. Language is not to be construed with such literal precision as to brand the parties with the absurdity of having intended that a line should be drawn through a regularly established warehouse so as to sever liability from nonliability. Words descriptive of location may be employed to express an absolute limitation upon the obligation of the insurer or as mere description to aid in identifying the property. De Graff v. Queen Ins. Co. 38 Minn. 501, 38 N. W. 696, 8 A. S. R. 685; see, Wild Rice Lbr. Co. v. Royal Ins. Co. 99 Minn. 190, 108 N. W. 871. In the light of the respective policies as a whole

and in view of the obvious facts as to the nature, ordinary use, and the usual storage of the property, the words descriptive of location should here be construed as words of identification rather than as words of limitation. Surely defendants, knowing full well when the insurance was placed that the property specified in the coverage clause was stored in a building which extended partially outside an arbitrarily described area, should not now be .heard to say that their liability stops at a fanciful line drawn through the structure. Soli v. Farmers' Mut. Ins. Co. 51 Minn. 24, 52 N. W. 979. We have long condemned the adherence to technical or literal meanings of words whereby an absurd or unjust result is produced in contravention of the obvious intent of the parties as gathered from the instrument as a whole. Long v. Fewer, 53 Minn. 156, 54 N. W. 1071.

Plaintiff was allowed to recover for the loss of a P. &. H. Shovel and two truck motors, as well as for certain other truck parts and supplies. Defendants allege that this was error, in that such items cannot be construed to be "for use in the care, maintenance and operation of the insured's plant." Again, it is necessary to remember that the insurance placed on the main building was for one constituting a gravel processing plant. The P. & H. Shovel was used in the gravel pit to haul material to the crusher and also for loading trucks from the stock pile. The crusher was an essential part of the plant and obviously could not operate without the delivery of the necessary raw materials. The overhead gravel bins at the east end of the plant were designed and used for the efficient and convenient loading of the trucks, but as to the overflow gravel placed in the stock pile it was necessary to use the P. & H. Shovel to accomplish the same result. In order to find that the P. & H. Shovel was not essential to the maintenance and operation of the plant, it would be necessary to follow a rule of strict construction against the insured instead of one of liberal contruction in his favor. There was no error. For similar reasons, the same conclusion is reached with respect to the truck motors and other truck parts and supplies. It is true that the policies specifically

exclude automobiles and trucks from coverage. The insurers, however, selected the language of exclusion, and they could easily have used words applicable to truck parts and supplies if coverage was not intended.

In evidence are three other policies taken out by plaintiff on other buildings and their contents. One of these policies, issued by the Hartford Insurance Company, insured the storehouse building for $300 and its contents for $700. Defendants contend that the taking out of this policy is conclusive evidence that plaintiff did not consider the policies here involved as covering the contents of the storehouse. It is to be remembered that the policies in issue all permit other insurance on the property covered by them, with the exception of two policies, in which the permission, as hereinafter noted, extended to blanket but not to specific insurance. In obtaining other insurance, plaintiff was only doing what it had a right to do. It may have acquired this additional insurance, which incidentally involved a lower premium rate, because it did not consider the amount carried in connection with the main building adequate in case a total loss was sustained. In the light of the evidence as a whole, plaintiff's acquirement of other insurance is neither significant nor controlling.

The policies issued by defendants Hardware Mutual Insurance Company and American Home Fire Assurance Company each contain at the end of the "machinery and equipment" clause a proviso limiting the coverage to property within the 100-foot area and "not otherwise specifically insured." Immediately following this provision is the typewritten clause "other insurance permitted." What is the effect of the limitation "not otherwise specifically insured," in view of the proviso that other insurance is permitted? In Buck v. Patrons Co-Operative F. Ins. Co. 177 Minn. 509, 512, 225 N. W. 445, 446, a case involving an apparent conflict between clauses A and C of an insurance policy, this court held:

"* * * If clauses A and C are taken literally, an ambiguity results, for in the case of change of ownership, not consented to by

the insurer and not known to the mortgagee, clause A avoids while clause C saves the insurance to the mortgagee. Such ambiguities, if not otherwise removable, are to be resolved against the insurer. 26 C. J. 72-74; Zenith B. & L. Co. v. National U. F. Ins. Co. 144 Minn. 386, 390, 175 N. W. 894. In case of conflict between general and particular language in a contract the particular controls. Quimby v. Shearer, 56 Minn. 534, 58 N. W. 155. But every provision, whether general or particular, is to be given reasonable effect if possible. So it must be concluded that *general* clause A was designed to reach only the owner or insured; and that *particular* clause C (introduced as it is by clause B, recognizing so explicitly that there may be liability to a mortgagee without any to the insured owner) was intended to control as between the insurer and mortgagee. This interpretation gives reasonable and harmonious effect to all the provisions of the contract. It does not make any of them surplusage, whereas if clause A controls both the rights of insured owner and mortgagee, clauses B and C are meaningless. Yet the contracting parties must be considered as having used them for a purpose."

In the instant case, both of the quoted clauses can be reconciled and given reasonable effect in harmony with the policy as a whole. The particular proviso "not otherwise specifically insured" refers only to the personal property described in the "machinery and equipment" clause and must control over the general proviso of "other insurance permitted." The latter reasonably refers to insurance in general, such as that of giving a blanket insurance coverage to all real and personal property without any limitation or apportionment as to the amount to be applied to particular items. Both the general and the specific provisions are given effect by construing them to mean that the assured could have other insurance so long as it was not specific insurance.

In thus harmonizing and giving effect to both provisions, we next come to the question whether the personal property described in the "machinery and equipment" clause was "otherwise *specifically* insured" (italics supplied) so as not to be covered by the policies

of the Hardware Mutual Insurance Company and the American Home Fire Assurance Company. The Hartford company (not a party to this action) had issued to plaintiff a policy insuring the storehouse building against loss in the sum of $300 and the contents thereof in the sum of $700. "Specific insurance" is insurance which in the event of loss is apportioned and distributed among several items in specific amount to each item. Hartford Steam Boiler I. & I. Co. v. Firemen's Mut. Ins. Co. 110 Conn. 332, 148 A. 135; Hale v. Central Mfrs. Mut. Ins. Co. (Mo. App.) 93 S. W. (2d) 271; 1 Cooley, Briefs on Insurance (2 ed.) 779. The Hartford policy clearly provided plaintiff with specific insurance. Therefore, the personal property described under the "machinery and equipment" clause is not covered by the policies of the above two defendants. As to these two defendants, there must be a reversal.

■ Defendants allege that the construction of the policies was erroneously submitted to the jury. As already noted, the order of the trial court must be reversed as to two defendants, but affirmed as to the others. Under the circumstances, any error in submitting the issues to the jury is harmless. In Hooper v. Webb, 27 Minn. 485, 488, 8 N. W. 589, 590, involving the erroneous submission of the construction of a contract to a jury, we held:

"* * * And though the court ought not to have left it to the jury to decide, yet, as their decision of it was clearly such as the court ought to have made, no harm resulted from leaving it to them."

Whatever harm resulted to defendants Hardware Mutual Insurance Company and American Home Fire Assurance Company has been corrected by a reversal herein as to them. No harm was sustained by the other defendants, as to whom the order of the trial court is affirmed. An appellate court will not reverse for harmless error. 1 Dunnell, Dig. & Supp. §§ 416, 422.

The order of the trial court is reversed as to defendants Hardware Mutual Insurance Company and American Home Fire Assurance Company with directions to enter judgments *non obstante* in

their favor. As to the other defendants, the order of the trial court is affirmed.

Affirmed in part and reversed in part.

[1]Reported in 30 N. W. (2d) 354.