**SWEDISH CRUCIBLE STEEL COMPANY, a Michigan Corporation,**
Plaintiff,

v.

**The TRAVELERS INDEMNITY COMPANY, a Foreign Corporation, Defendant and Third-Party-Plaintiff,**

v.

**GROW, KELLER, ENGLEBERT & FREESE, INC. a Michigan Corporation, Third-Party-Defendant.**

Civ. A. No. 36646.

United States District Court,
E. D. Michigan, S. D.

Sept. 23, 1974.

Robert A. Fineman, Detroit, Mich., for plaintiff.

Julius Denenberg, Southfield, Mich., for defendant.

Roger F. Wardle, Detroit, Mich., for third party defendant.

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PHILIP PRATT, District Judge.

The plaintiff, Swedish Crucible Steel Company, conducts a plastics and foundry manufacturing business at a location in Hamtramck, Michigan. The complex includes eight buildings, designated serially. Buildings 2 through 8 are used in the plastics division primarily. Building 1 is used as the foundry, but some molds, dies and patterns for the foundry were stored in Building 2. Buildings 1 and 2 are separated by an alley 20 feet wide.

Although prior to 1967 the plaintiff had obtained a blanket business interruption policy covering its plastics business and Buildings 2 through 8 it did not include within that policy any business in-

terruption coverage on the foundry operation in Building 1. In 1967, however, it decided to obtain such coverage and the policy in issue here was purchased from defendant, Travelers Indemnity Company.

On May 23, 1970, a fire originated in Building 2 and, in addition to damaging that building severely, many molds, dies and patterns utilized by the foundry division were destroyed or damaged. Building 1 was not physically damaged. However, because of the aforesaid loss of various molds, dies and patterns, the foundry business suffered an appreciable reduction of business.

Plaintiff now seeks to invoke the provisions of Policy No. 3529665 (issued October 26, 1967) as covering the business interruption loss sustained by the foundry division because of the destruction and damage to the molds, dies and patterns.

By agreement, the parties have submitted cross motions relating to the interpretation of the insurance contract. It was also agreed that the facts relating to that issue are not in dispute and, further, that other issues, i. e., estoppel and reformation, are not to be considered at this time. Briefs were submitted and oral arguments heard.

Policy No. 3529665 included the following provision which is the focal point of the dispute:

> "On Business Interruption 80% contribution excluding Ordinary Payroll, in Bldg. #1, occupied as a Foundry, situated 8557 Butler Avenue, Hamtramck, Michigan."

■ The law is well established in Michigan that:

> "[T]he terms of an insurance policy shall be construed in the plain, ordinary, and popular sense of the language used, and that a provision of a policy plainly and definitely expressed in appropriate language must be enforced as written." Burns v. Mutual Ben. Life Ins. Co., 79 F.Supp. 847, 852 (W.D.Mich.1948). See also Kingsley v. American Central Life Ins. Co., 259 Mich. 53, 242 N.W. 836 (1932);

Cottrill v. Mich. Hosp. Service, 359 Mich. 472, 102 N.W.2d 179 (1960); Sump v. St. Paul etc., Ins. Co., 21 Mich.App. 160, 175 N.W.2d 44 (1970). Hence, in the absence of an ambiguity the Court is bound to enforce the contract of insurance according to its express terms. In this respect it is important to note that the "mere assertion of an ambiguity does not establish ambiguity; it arises, if at all, from the language claimed to be ambiguous." Topolewski v. Detroit Automobile Inter-Insurance Exchange, 6 Mich.App. 286, 289, 148 N.W. 2d 906, 907 (1967); Vigil v. Badger Mutual Insurance Company, 363 Mich. 380, 109 N.W.2d 793 (1961).

■ In interpreting the meaning of an insurance contract and determining whether there is any ambiguity present, the Court must read the policy as a whole. Hauser v. Mutual Liability Co., 276 Mich. 624, 268 N.W. 759 (1936). Couch on Insurance 2d, § 15.29. As was stated in Appleman on Insurance, § 7383:

> "It being presumed that every condition was intended to accomplish some purpose, it is not to be considered that idle provisions were inserted. Each word is deemed to have some meaning, and none should be assumed to be superfluous."

The Court then must look to the totality of the writing to determine whether an ambiguity exists or whether the writing, taken as a whole, is actually susceptible to but one rational interpretation.

In passing it is interesting to note that one commentator has observed that:

> "On the whole it appears that the courts have, with occasional exceptions, quite uniformly found business interruptions or use and occupancy insurance policies to be clear and unambiguous with little need for construction or interpretation, and have generally enforced them according to their literal language and meaning." Anno: Business Interruption or Use and Occupancy Insurance, 83 ALR2d 885, 896 (1962).

Applying the aforecited standards to the instant case, this Court is of the opinion that no ambiguity exists on the face of the insurance policy.

As a general rule, it has been stated that:

"In determining the nature and extent of the business covered by the policy, the courts stating that the object and intention was to insure against loss from the interruption of the insured's business as a whole, have not confined the recoverable loss to the particular property described in the policy, or to the exact operations or business in which the insured was engaged at the time the policy was written." Anno: Business Interruption or Use and Occupancy, 83 ALR2d 885, 889.

However, the contract before this Court militates against the application of the general rule.

The policy as written covers only one building, Building No. 1, occupied as a foundry and provides that physical damage is a necessary condition precedent to recovery thereunder. The general provisions in the policy are incorporated within a standard form fire insurance policy. This implies that the basic thrust and intent of the policy is to cover a specific piece of property against business interruption losses when it or its contents are physically damaged. In other words, this policy was intended to be read in conjunction with a fire policy on the same building so that if a building were damaged or destroyed by fire, structural loss would be covered under the fire insurance policy while the business loss resultant therefrom would be covered under the business interruption policy. For example, if an individual owns and utilizes three structures in his business, of which only one is covered by both types of insurance, and all three buildings are destroyed by fire, the insured could seek recovery for fire loss to only the one, covered structure and would not be able to recover on the others. To hold that the other buildings were automatically insured because one of them is covered would be to impliedly alter the actuarial

risk insured against. Since fire losses can be recovered for only the one building, it should logically follow that business losses would likewise be recoverable for only the losses occasioned by destruction to the one, covered building.

Apart from the importance ascribed to the inclusion of general fire loss provisions in the instant policy, this Court finds other, more persuasive grounds for denying the plaintiff's motion.

The instant policy makes numerous, repeated references to the described building. The Business Interruption Form, which was attached to the general policy provides, in relevant part:

"1. This policy covers against loss resulting directly from necessary interruption of business caused by *damage to or destruction of personal property . . . on premises occupied by the insured and situated as herein described.*

2. (Losses are limited in duration) . . . for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace *such part of the property herein described as has been damaged or destroyed . . .*

17. Requirements in Case Loss Occurs: The Insured shall give immediate written notice to this Company of any Business Interruption Loss and protect the property from further damage that might result in extension of the period of interruption; and within 60 days *following the date of damage to or destruction of the real or personal property described. . . .* The Insured shall render to this Company a proof of loss . . ." (Emphasis supplied).

Further, the Vandalism and Malicious Mischief Endorsement (Form 205, 6/66) provides, in part, that:

"1. This Company shall not be liable for loss if the *described building(s)* had been vacant or unoccupied beyond a period of thirty (30) consecutive days immediately preceding the loss . . .

2. This Company shall not be liable for loss—

(a) to glass (other than glass building blocks) *constituting a part of the building;*

(b) by pilferage, theft, burglary or larceny, except that this Company shall be liable for willful damage *to the building(s) covered hereunder* caused by burglars." (Emphasis supplied).

The clear meaning of these provisions is that there must be actual, physical damage to Building No. 1, occupied as a Foundry before the insured can seek recovery thereon.

The first page of the policy states that it is a Standard Fire Insurance Policy for forty-four states, including Michigan. It further states under the heading "Description and Location of the Property Covered" that it covers "Business Interruption in Building No. 1, occupied as a Foundry". Also on page one, the policy states that it insures against "all Direct Loss by Fire to the property described herein." On Form 61, 8/61, which is a part of this policy, special provisions are made for Business Interruption Insurance:

"The term 'direct,' as applied to loss, means loss, as limited and conditioned in such policy, resulting from direct loss to described property from the peril(s) insured against."

On Form 19C, 6/66, which was also a part of this policy it is stated that the Insurer is not liable for "consequential or remote loss." From these provisions it is clear that in order to be a direct loss compensable under the policy there must be actual physical damage to the described premises.

The plaintiff has cited numerous opinions from other jurisdictions which have held, under various circumstances, that described premises encompasses more than the premises enumerated in the policies. These cases, with the exception of Studley Box & Lumber v. National Fire Insurance Co., 85 N.H. 96, 154 A. 337 (1931), are readily distinguishable from the instant case. In the first respect, they are all property insurance cases and not Business Interruption policies. Secondly, and more importantly, these cases are factually distinguishable from the instant case in several significant respects. In Tegley Hardware Co. v. Continental Insurance Co., 97 Kan. 127, 154 P. 229 (1916) the Court placed heavy emphasis upon the fact that both the Insured and the Insurer's agent consciously sought to cover the unnamed property. No such circumstance appears in this case at this stage at least. Firemen's Ins. Co. of Newark, N. J. v. Motley, 222 Ark. 968, 264 S.W.2d 418 (1954) also involved a conscious attempt by the insurance agent to cover the unnamed premises. Of particular importance to the Insured's case was the fact that there was only $325 worth of equipment in the described building and over $1800 worth of equipment in the undescribed buildings. The policy limits were $1500. On its face, it was clear that the unnamed building was intended to be covered under the policy by the gross disparity of value in the goods stored in the various structures. In Elliott v. Retail Hardware Mutual Fire Ins. Co., 183 Minn. 556, 237 N.W. 421 (1931) the Court merely interpreted the additions clause of the policy, a contention not made in the instant case. Cement, Sand & Gravel Co. v. Agricultural Ins. Co., 225 Minn. 211, 30 N.W.2d 341 (1947) held that the language used could either be a maximum limit of the policy or a mere description. Further, the language of the policy, on its face, clearly encompassed more than merely the "main building." In Edwards v. Fireman's Ins. Co., 43 Misc. 354, 87 N.Y.S. 507 (1904) the plaintiff insured used four buildings to which there was only one entrance. Accordingly, it was only logical to identify these buildings as A. H. Van Hom's Storage Warehouse situated at the street address in which the entrance was locat-

ed. In the instant case, Building No. 1 has a different address from Building No. 2. Moreover, the premises were not identified as a foundry but rather as Building No. 1, occupied as a foundry. This makes the instant case readily distinguishable from *Edwards*. In short, the aforecited authorities are of dubious precedential value.

The sole authority cited by the plaintiff which deals directly with the issue at hand is Studley Box & Lumber Co. v. National Fire Insurance Co., *supra*. Therein the insured had obtained business interruption insurance on "the buildings situate(d) at the foot of Silver Street, . . . Rochester, . . . and occupied as a box shook factory and dressing mill". The court held that although it was not described, this coverage included losses which resulted from the destruction of a stable separated from the main buildings by some twenty feet. To this end the court stated that:

> *"Without evidence to the contrary,* the object of the policies is clear to insure against loss from the interruption of the business as a whole, whatever part of it may be conducted in or with the property which suffers from the fire." 154 A. at 338 (Emphasis supplied).

The instant case presents a situation which is removed from the holding of *Studley* by its express language in that this case presents "evidence to the contrary" on its very face. Policy No. 3529665 specifically covers against losses incurred at Building No. 1. It specifically designates a particular building within the plaintiff's Hamtramck complex. Indeed, it would be hard for the insurer to choose words more carefully drawn to limit recovery to damages at Building No. 1 than those which were used in the instant policy. Further, it was conceded in *Studley* that the policy covered an office and certain buildings on the other side of the roadway even though these structures were not identified in the policy. Thus it did not do an injustice to the terms of the policy to include, within the ambit of the policy's coverage, the stable which was also unnamed in the policy. If in the instant case it were conceded that certain other structures, excluding Building No. 2, were covered, this case would be on all fours with *Studley* and losses in Building No. 2 could be obtained under the instant policy. However, here it is ardently maintained that Swedish Crucible intended to go "specific" and insure one building rather than the entire complex of them. Swedish should be held to that choice.

To hold otherwise and treat Building No. 2 as being within the described premises would do a disservice to the theory of insurance coverage as it is written by Travelers. Indeed, it would encourage insureds to "go specific" and obtain insurance only on the most important buildings in their operations. Then, if *any* building were destroyed, they would be able to recover for all their business losses. It is clear to this Court that the policy written by Travelers was intended to insure against business losses occasioned by the destruction of the described premises, and no more. The language of the policy is clear and unambiguous. Accordingly, this Court is constrained to enforce its terms as written to the exclusion of recovery under Policy No. 3529665.

It is so ordered.